1  **HOLLAND & KNIGHT LLP**
   Zachary C. Frampton (SBN 303225)
2  zac.frampton@hklaw.com
   400 South Hope Street, 8th Floor
3  Los Angeles, CA  90071
   Telephone:  213.896.2400
4  Facsimile:  213.896.2450

5  Attorneys for Defendant
   AmeriCredit Financial Services, Inc. d/b/a GM Financial
6  (incorrectly sued as "General Motors Financial Company")

7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

| 11 | CALABASAS LUXURY MOTORCARS, INC., | Case No.:  2:21-cv-09566-AB-PD |
|----|-----------------------------------|--------------------------------|
| 12 | Plaintiff, | Hon. Judge André Birotte Jr. Hon. Mag. Judge Patricia Donahue |
| 13 | v. | **DEFENDANT AMERICREDIT FINANCIAL SERVICES, INC.** |
| 14 | GENERAL MOTORS, LLC.; GENERAL MOTORS FINANCIAL COMPANY; and DOES 1 through 10, inclusive, | **D/B/A GM FINANCIAL'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| 15 | | |
| 16 | | |
| 17 | Defendants. | |
| 18 | | |
| 19 | | [Fed. R. Civ. P. 12(b)(6)] |
| 20 | | Date:   April 8, 2022 Time:  10:00 a.m. |
| 21 | | Place: Courtroom 7B |
| 22 | | Compl. Filed: December 10, 2021 |

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

*Left margin (vertical):* Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT**, on Friday, April 8, 2022, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 7B of the United States District Court for the Central District of California, located at 350 W. 1st Street, Los Angeles, CA  90012-4565, before the Honorable André Birotte Jr., Defendant AmeriCredit Financial Services, Inc. d/b/a GM Financial ("GM Financial") (erroneously sued as General Motors Financial Company) will, and hereby does, move this Court for an order under Federal Rule of Civil Procedure 12(b)(6) dismissing the claims filed in this putative class action by Plaintiff Calabasas Luxury Motorcars, Inc. ("Plaintiff") on the grounds that each cause of action alleged in the Complaint fails to state a claim upon which relief can be granted.

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, all papers, pleadings, documents, arguments of counsel, other materials presented before or during the hearing on this motion, and any other evidence and argument the Court may consider.

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which occurred on February 18, 2022.

Dated:  February 25, 2022          HOLLAND & KNIGHT LLP

By:   */s/ Zachary C. Frampton*
     Zachary C. Frampton (SBN 303225)

Attorneys for Defendant
AMERICREDIT FINANCIAL SERVICES,
INC. D/B/A GM FINANCIAL

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

# **TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION .................................................................................. 5

II.    BACKGROUND ................................................................................... 7

   A.   The Parties ................................................................................ 7

   B.   Allegations in the Complaint .................................................... 8

   C.   The GM Financial Lease Agreements ....................................... 8

III.   LEGAL STANDARDS ......................................................................... 9

   A.   Pleading Standard .................................................................... 9

   B.   Incorporation by Reference Doctrine ...................................... 10

IV.   ARGUMENT ..................................................................................... 11

   A.   Plaintiff Failed to Plead Fundamental Elements of Its Cartwright Act Claim and Its Claim Must Be Dismissed .................................................... 11

     1.   Plaintiff Has Not Properly Alleged the Existence of a Conspiracy Involving GM Financial. ................ 12

     2.   Plaintiff Has Not Properly Alleged Harm to Competition Under the Rule of Reason. ........................ 14

       (a)   Plaintiff's Alleged Product Market of Used GM Vehicles Is Contradicted By Its Own Allegations. .................. 15

       (b)   Plaintiff's Has Not Alleged and Cannot Plausibly Allege that Some Purchasers Would Not Cross State Lines to Buy A Used Car. .......................................................................... 16

       (c)   Plaintiff Suffers No Harm from Its Inability to Purchase Leased GM Vehicles Because Nothing Prevents It from Buying GM Vehicles from Their Owners. .................................. 17

   B.   Plaintiff Has No Right Under California Law to Acquire Leased GM Vehicles and Its UCL Claim Must Be Dismissed. ................................... 19

V.   CONCLUSION .................................................................................. 22

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Asahi Kasei Pharma Corp. v. CoTherix, Inc.*,
204 Cal. App. 4th 1 (2012) ................................................................................ 13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................................ 9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......................................................................................... 12

*Catalano, Inc. v. Target Sales, Inc.*,
446 U.S. 643 ...................................................................................................... 14

*In re Cipro Cases I & II*,
61 Cal. 4th 116 (2015) ...................................................................................... 14

*Exxon Corp. v. Superior Court.*,
51 Cal. App. 4th 1672 (1997) ...................................................................... 14, 15

*Flagship Theatres of Palm Desert, LLC v. Century Theatres, Inc.*,
55 Cal. App. 5th 381 (2020) ........................................................................ 16, 17

*Freeman v. San Diego Ass'n of Realtors*,
322 F.3d 1133 (9th Cir. 2003) .......................................................................... 13

*Freeman v. San Diego Ass'n of Realtors*,
77 Cal. App. 4th 171 (1999) ........................................................................ 11, 13

*G.H.I.I. v. MTS, Inc.*,
147 Cal. App. 3d 256 (1983) ........................................................................ 11, 12

*Hicks v. PGA Tour, Inc.*,
897 F.3d 1109 (9th Cir. 2018) .......................................................................... 15

*Humana Inc. v. Mallinckrodt ARD LLC*,
No. 19-cv-06926, 2020 WL 3041309 (C.D. Cal. Mar. 9, 2020) ...................... 16

*Kendall v. Visa USA, Inc.*,
518 F.3d 1042 (9th Cir. 2008) ................................................................. 9, 10, 12

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

*Kunert v. Mission Fin. Servs. Corp.*,
110 Cal. App. 4th 242 ........................................................................... 19

*Marsh v. Anesthesia Servs. Med. Group, Inc.*,
200 Cal. App. 4th 480 (2011) ............................................................... 11

*Obesity Research Inst. v. Fiber Research Int'l, LLC*,
165 F. Supp. 937 (S.D. Cal. 2016) ........................................................ 19

*Ohio v. Am. Express Co.*,
138 S. Ct. 2274 (2018) .......................................................................... 14

*People's Choice Wireless, Inc. v. Verizon Wireless*,
131 Cal. App. 4th 656 (2005) .......................................................... 17, 21

*Roth v. Rhodes*,
25 Cal. App. 4th 530 (1994) ................................................................. 12

*In re Silicon 1021 Graphics, Inc. Securities Litig.*,
970 F. Supp. 746 (N.D. Cal. 1997) ....................................................... 10

*TBRR, Inc. v. Americredit Fin. Servs., Inc.*,
No. 20-11269, 2021 WL 4522306 (E.D. Mich. Oct. 4, 2021) .......................... 13

*United States v. Topco Assocs., Inc.*,
405 U.S. 596 (1972) .............................................................................. 14

*Vijay v. Twentieth Century Fox Film Corp.*,
No. 14-5404, 2014 WL 5460585 (C.D. Cal. Oct. 27, 2014) ............................ 10

**Statutes**

Business & Professions Code § 17200 ................................................ 8, 19

California Civil Code § 2987(f) ................................................................ 20

California Vehicle Code § 11709.4 ................................................ 19, 20, 21

Sherman Act Section 1, 15 U.S.C. § 1 .................................................... 14

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ................................................... 9

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

## I.   INTRODUCTION

Consumers who lease GM vehicles enter into a standard lease agreement that, in addition to specifying the length of the lease and the lessee's payments, also states clearly that lessees have "no ownership rights in the Vehicle unless you exercise your purchase option" and that they will be in default under the lease if they "assign the Lease or transfer the Vehicle without our prior written permission."  Plaintiff, which is an unaffiliated car dealer, has no right under the terms of the lease to purchase a leased vehicle.  That right resides only with the lessee.  Plaintiff, however, complains that Defendants have denied it the right to stand in the shoes of the lessee, and, after the lessee has traded the leased vehicle for one sold by Plaintiff, allow Plaintiff to purchase the leased vehicles for resale to Plaintiff's own customers.

From these simple facts, Plaintiff attempts to find anticompetitive practices actionable under the Cartwright Act or unfair competition supporting claims under California's Unfair Competition Law.  But the genesis of the claim in the simple and uncontroversial terms of the standard lease agreement belies the existence of the grand anticompetitive scheme Plaintiff seeks to establish.  GM LLC and GM Financial (as defined in Section II.A, below) did not "conspire" with each other to create these routine lease terms in an effort to restrict competition and, in any event, as part of the same corporate family cannot as a matter of law be found to have conspired with each other in violation of the Cartwright Act.  Plaintiff also alleges no facts that would support its conclusory allegations of any conspiracy with any other entities.  Without plausible allegations that Defendants knowingly participated in a conspiracy, Plaintiff has failed to allege a Cartwright Act violation.

Plaintiff's claims also make no sense because Plaintiff alleges an effort by Defendants to "corner the market" for the sale of used GM vehicles, deny Plaintiff the opportunity to sell used GM vehicles, and limit outlets for consumers to purchase used GM vehicles in California.  However, because nothing Defendants are alleged

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

to have done restricts in any way the ability of Plaintiff to purchase previously owned (as opposed to previously leased) GM vehicles, Plaintiff can continue to compete in the sale of used GM vehicles, just as it does today.  Further, the conduct of which Plaintiff complains does not restrict the ability of Plaintiff to sell or consumers to purchase any other brands of vehicles, and Plaintiff alleges no facts whatsoever (nor could it) to support its position that used GM vehicles and used vehicles of other brands are not reasonable substitutes for one another.  To the contrary, Plaintiff acknowledges that consumers often seek to trade in leased GM vehicles for vehicles of other brands, Complaint ("Compl.") ¶¶ 31, 40, 42, thereby admitting the obvious proposition that many consumers substitute among car brands.  Plaintiff has thus failed to properly allege a relevant antitrust market in which competition is harmed, and its Cartwright Act claim should be dismissed for this reason as well.

Plaintiff's efforts to allege a UCL violation fare no better.  It claims to find a right under California law to purchase leased vehicles in spite of the specific terms of the lease to which the lessee has agreed.  But Plaintiff acknowledges that the principal statute on which it relies does not explicitly confer that right, and the legislative history of the statute makes it clear that it was intended to protect consumers, not dealers like Plaintiff.  The California legislature adopted that statute, which requires a dealer that acquires a vehicle via a trade-in to pay any outstanding "credit or lease balance owing on the vehicle . . . within 21 calendar days," Cal. Vehicle Code § 11709.4, to address a recurring problem of dealers like Plaintiff purchasing vehicles and failing to pay off balances owed by the consumers, leaving consumers facing significant liabilities to lenders or lessors.  Plaintiff has no right under this statute to buy leased GM vehicles from lessees (in contravention of the clear terms of the lease) and no statutory basis to support its UCL claim.  To the extent the claim is based on its Cartwright Act claim, that too fails given the above-described fundamental flaws in that claim.

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

For these reasons, and as discussed in more detail below, Plaintiff has failed to state a claim entitling it to relief and its Complaint should be dismissed.[1]

## II.   **BACKGROUND**

### A.   **The Parties**

Plaintiff is a "high-end luxury used vehicle dealership" incorporated in California with its principal place of business in Los Angeles.  Compl. ¶¶ 8, 57.

Defendants General Motors, LLC ("GM LLC") and AmeriCredit Financial Services, Inc. d/b/a GM Financial ("GM Financial") (incorrectly identified in the complaint as "General Motors Financial Company") are part of the same corporate family and reside under the corporate umbrella of General Motors Company. Compl. ¶¶ 9, 10

Specifically, as set forth public filings with the Securities and Exchange Commission ("SEC"), GM LLC and GM Financial are both indirect, wholly owned subsidiaries of General Motors Company. *See* Exhibit A to GM Financial's Request for Judicial Notice ("RJN") (General Motors Company's 2021 Form 10-K) (listing "AmeriCredit Financial Services, Inc." and "General Motors LLC" among the "subsidiaries and joint ventures" of General Motors Company").  GM Financial is "a wholly-owned and the primary operating subsidiary" of General Motors Financial Company, Inc.  RJN, Ex. B (Form SF-3).  General Motors Financial Company, Inc., in turn, "is the wholly-owned captive finance subsidiary of" General Motors Company.  *Id.*, Ex. C (Amended and Restated Support Agreement).  General Motors LLC is "an indirect wholly-owned subsidiary of General Motors Company."  *Id.*, Ex. D (Form 8-K).  These SEC filings are official public records, readily accessible to anyone, and subject to judicial notice under Rule 201.  *See Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1064 n.7 (9th Cir. 2008) (citing *Dreiling v. Am. Exp. Co.*, 458 F.3d 942, 946 n.2 (9th Cir. 2006)).

---

[1] GM Financial also adopts and incorporates herein the arguments for dismissal laid out in the Motion to Dismiss submitted by its co-Defendant, General Motors, LLC.

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

Likewise, the corporate disclosure statements filed in this case under Rule 7.1 of the Federal Rules of Civil Procedure establish that GM LLC and GM Financial are indirect, wholly owned subsidiaries of General Motors Company. ECF No. 14 (GM LLC's Certification and Notice of Interested Parties); ECF No. 16 (GM Financial's Certification and Notice of Interested Parties). Because there is no basis for Plaintiff to dispute the accuracy and authenticity of these corporate disclosures, they are also judicially noticeable. *Fauley v. Washington Mut. Bank FA*, No. 3:13-CV-00581-AC, 2014 WL 1217852, at *4 (D. Or. Mar. 21, 2014).

### B.  Allegations in the Complaint

On December 10, 2021, Plaintiff filed this putative class-action Complaint against GM LLC and GM Financial. ECF No. 1. Plaintiff brought this action on behalf of a putative class consisting of all non-GM vehicle dealers in California that have allegedly been unable to acquire GM vehicles because of restrictions that Defendants have imposed on lessees of GM cars. Compl. ¶ 39. Plaintiff alleges it has had potential customers attempt to trade in or sell GM vehicles still under lease with GM Financial, only to have Defendants block the transactions by refusing to allow Plaintiff to pay off the vehicles and take title. *Id*. at ¶ 57. Instead, according to Plaintiff, Defendants allow lessees to trade in their vehicles only with an authorized GM dealer. *Id*. Plaintiff claims that Defendants have harmed competition and engaged in unfair conduct by favoring GM dealers over unaffiliated dealers like Plaintiff. *Id*. at ¶ 39.

Based on these allegations, Plaintiff asserts claims for (1) restraint of trade in violation of the Cartwright Act and (2) unlawful and unfair business practices in violation of Business & Professions Code § 17200 ("UCL").

### C.  The GM Financial Lease Agreements

The three form GM Financial lease agreements that were in use in the four-year limitations period for Plaintiff's claims state clearly and unambiguously that lessees hold no ownership in the leased vehicles and that the leases are not

assignable.  The introductory paragraph of both leases provides:  "You are leasing the Vehicle and have no ownership rights in the Vehicle unless you exercise your purchase option."  Williams-Hill Decl., Exs. A, B & C at p. 1.

Under the lease agreements, the purchase option provides:

> **Option to Purchase Vehicle.**  You have the option to buy the Vehicle at any time from a party designated by us.   If you do, you agree to re-register and re-title the Vehicle in your name no later than 30 days from the time you purchase it.

Williams-Hill Decl. Exs. A, B & C at p. 2.  Although the lessee has a right to purchase his or her leased vehicle at any time, that right is non-transferrable.  The lessee "will be in default under this Lease" if he or she "assign[s] the Lease or transfer[s] the Vehicle without our prior written permission or attempt[s] to do either."  *Id.*  For this reason, third parties, such as Plaintiff, do not have a right to accept as trade-ins GM vehicles that are still under lease or to purchase such vehicles from lessees.

## III.    LEGAL STANDARDS

### A.    Pleading Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 663 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* at 678.  A pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will be dismissed.  *Id.* (internal quotations and citation omitted).  A plaintiff cannot plead just the "ultimate facts" and "legal conclusions," but instead must plead the necessary evidentiary facts to support the conclusions.  *Kendall v. Visa USA,*

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

*Inc.*, 518 F.3d 1042, 1047-48 (9th Cir. 2008). Accordingly, "a naked assertion" of wrongdoing without some further factual enhancement is not plausible. *Id.* If plaintiff's factual allegations fail to state a claim under a cognizable theory and additional facts would not cure such defect, the claim fails as a matter of law and must be dismissed with prejudice. *Vijay v. Twentieth Century Fox Film Corp.*, No. 14-5404, 2014 WL 5460585, at *2 (C.D. Cal. Oct. 27, 2014).

These principles apply with special force in antitrust cases. Courts have emphasized that the "pleading-stage inquiry" in antitrust cases should be rigorous "lest the antitrust laws become a treble damages sword rather than the shield against competition-destroying conduct that Congress meant them to be." *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 450 (6th Cir. 2007). The Ninth Circuit has further stated that "an antitrust complaint must cross the threshold not only between 'conclusory and factual' but also between the 'factually neutral and the factually suggestive.'" *Kendall*, 518 F.3d at 1049 (citation omitted).

## B. Incorporation by Reference Doctrine

Under the incorporation by reference doctrine, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994); *Knievel v. ESPN, Inc.*, 223 F. Supp. 2d 1173, 1176 (D. Mont. 2002), *aff'd sub nom. Knievel v. ESPN*, 393 F.3d 1068 (9th Cir. 2005) (holding that, where a document was mentioned in the complaint and attached as an exhibit to the defendant's motion to dismiss, the court could consider the entire contents of the document under the incorporation by reference doctrine); *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), *as amended* (July 28, 1998). Declarations are an appropriate method for parties to bring these materials to the attention of the court. *See In re Silicon 1021 Graphics, Inc. Securities Litigation*, 970 F. Supp. 746, 758–59 (N.D. Cal. 1997)

1   (denying plaintiffs' motion to strike a declaration submitted in support of a motion

2   to dismiss because it referenced materials that were incorporated by reference in

3   plaintiffs' complaint).

4          Plaintiff bases this action on the alleged structure of GM Financial leases

5   during the relevant time period.  *See* Compl. ¶¶ 26-38, 40.  Plaintiff's claims under

6   the Cartwright Act and UCL both have a four-year statute of limitations.

7   Accordingly, the Court can and should consider the GM Financial lease agreements

8   that were operative during the limitations period.  Declaration of Bridgette Williams-

9   Hill ("Williams-Hill Decl."), Exs. A, B & C.

**IV.   <u>ARGUMENT</u>**

### A.   Plaintiff Failed to Plead Fundamental Elements of Its Cartwright Act Claim and Its Claim Must Be Dismissed.

13          To establish a claim under the Cartwright Act, the Plaintiff must prove "(1)

14   the formation and operation of [a] conspiracy, (2) the wrongful act or acts done

15   pursuant thereto, and (3) the damage resulting from such act or acts."  *Marsh v.*

16   *Anesthesia Servs. Med. Group, Inc.*, 200 Cal. App. 4th 480, 493 (2011) (quoting

17   *Quelimane Co. v. Stewart Title Guarantee Co.*, 19 Cal. 4th 47, 77 (1998)).  California

18   law "demands a 'high degree of particularity' in the pleading of Cartwright Act

19   violations."  *G.H.I.I. v. MTS, Inc.*, 147 Cal. App. 3d 256, 265 (1983) (quoting

20   *Motors, Inc. v. Times Mirror Co.*, 102 Cal. App. 3d 735, 742 (1980)); *Freeman v.*

21   *San Diego Ass'n of Realtors*, 77 Cal. App. 4th 171, 195 (1999).

22          Plaintiff's vague allegations of a conspiracy between "Defendants and

23   others," Compl. ¶¶ 44-45, and between "Defendants and their co-conspirators," *id.*

24   ¶¶ 69, 71, do not suffice to meet Plaintiff's pleading obligation, and its allegations

25   of a conspiracy between Defendants, *see id.* ¶ 47, fails as a matter of law because

26   GM LLC and GM Financial are part of the same corporate family and are legally

27   incapable of conspiring with one another.  Plaintiff also fails to properly plead any

28   wrongful acts by Defendants under the second element of their Cartwright Act claim

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

because they allege no facts whatsoever in support of the existence of a relevant antitrust market for used GM vehicles sold in the state of California, a market rendered implausible by Plaintiff's own allegations of substitutability for consumers among different brands of cars. Finally, Plaintiff cannot plausibly allege that it or any other unaffiliated used car dealer will be unable to offer used GM vehicles to their customers when they complain only about lack of access to *leased* GM vehicles and not about any inability to purchase GM vehicles from existing owners.

### 1. Plaintiff Has Not Properly Alleged the Existence of a Conspiracy Involving GM Financial.

Plaintiff's vague and shifting allegations of a conspiracy involving GM Financial fail to adequately plead the existence of a plausible conspiracy sufficient to sustain its Cartwright Act claim. Under the Cartwright Act, "general allegations of a conspiracy" are insufficient. *G.H.I.I.*, 147 Cal. App. 3d at 265. To meet its pleading obligation, Plaintiff must offer "more than labels or conclusions" and more than merely "conclusory allegation[s] of agreement at some unspecified point in time." *Twombly*, 550 U.S. at 555-56. Plaintiff cannot plead only "ultimate facts," it must provide the "necessary evidentiary facts" to support the existence of a conspiracy, such as "who, did what, to whom (or with whom), where, and when?" *Kendall*, 518 F.3d at 1047-48.[2]

Plaintiff has failed to provide those "necessary evidentiary facts" here. It makes a variety of conclusory and inconsistent assertions of conspiracies involving Defendants and others, without pleading any facts that that explain who other than Defendants was involved in the alleged conspiracy, much less any details concerning when it was formed or what the participants agreed to do in furtherance of the

---

[2] "[A] long line of California cases has concluded that the Cartwright Act is patterned after the Sherman Act and both statutes have their roots in the common law. Consequently, federal cases interpreting the Sherman Act are applicable to problems arising under the Cartwright Act." *Roth v. Rhodes*, 25 Cal. App. 4th 530, 542 (1994) (citing *Marin County Bd. of Realtors, Inc. v. Palsson*, 16 Cal. 3d 920, 925 (1994)).

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

conspiracy. *See* Compl. ¶¶ 44-45 ("Defendants and others"), ¶ 47 ("Defendants have colluded with each other"), ¶ 52 ("agreement between Defendants and their franchisees"), ¶¶ 69, 71 ("Defendants and their co-conspirators"). These imprecise allegations do not meet Plaintiff's pleading burden under the Cartwright Act.

Further, because Defendants are both subsidiaries of General Motors Company and part of the same corporate family, *see* § II.A, *supra*; GM Financial's Req. for Judicial Notice in Supp. of Mot. to Dismiss, filed herewith, allegations of a conspiracy between them fail as a matter of law. "Only separate entities pursuing separate economic interests can conspire within the proscriptions of the" Cartwright Act. *Freeman v. San Diego Ass'n of Realtors*, 77 Cal. App. 4th 171, 189 (1999) (citing *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 769-71 (1987)). GM LLC and GM Financial, as indirect, wholly owned subsidiaries of the same company and lacking separate economic interests, are legally incapable of conspiring to violate the antitrust laws. *See Freeman v. San Diego Ass'n of Realtors*, 322 F.3d 1133, 1147 (9th Cir. 2003) (stating that the "single-entity" rule, under which a "company cannot conspire with itself[,] . . . applies to subsidiaries controlled by a common parent"); *see also Asahi Kasei Pharma Corp. v. CoTherix, Inc.*, 204 Cal. App. 4th 1, 11 (2012) ("[A]n indispensable element of any action under the Cartwright Act is proof of a 'combination of resources of two or more *independent interests* for the purpose of restraining commerce and preventing market competition.'" (emphasis in original; citation omitted)). Because GM LLC and GM Financial cannot conspire with one another, Plaintiff's efforts to base its Cartwright Act claim on such a conspiracy must be rejected. Indeed, an antitrust case alleging the existence of a conspiracy between Defendants was recently dismissed on precisely these grounds. *See TBRR, Inc. v. Americredit Fin. Servs., Inc.*, No. 20-11269, 2021 WL 4522306, at *6 (E.D. Mich. Oct. 4, 2021) (relying on corporate disclosure statements as basis for finding that GM LLC and GM Financial are "corporate siblings, with General Motors Corporation as a shared parent").

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

### 2. Plaintiff Has Not Properly Alleged Harm to Competition Under the Rule of Reason.

Plaintiff's Cartwright Act claim also fails because it has not alleged harm to competition under the rule of reason, under which it must plead facts showing that GM Financial possesses market power within a relevant antitrust market. *See Exxon Corp. v. Superior Court.*, 51 Cal. App. 4th 1672, 1680-82 (1997) ("Vertical non-price restraints are tested under the rule of reason; that is, the plaintiff must prove that the restraint had an anticompetitive effect in the relevant market in order to prevail . . . . [A] plaintiff . . . must delineate a relevant market and show that the defendant plays enough of a role in that market to impair competition significantly."); *Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2284-85 & n.7 (2018) ("To determine whether a restraint violates the rule of reason . . . , the plaintiff has the initial burden to prove that the challenged restraint has a substantial anticompetitive effect that harms consumers in the relevant market. . . . Vertical restraints . . . cannot be evaluated unless the Court first defines the relevant market.").[3]

---

[3] Certain agreements between horizontal competitors have been found to be so dangerous to competition that they can be condemned as *per se* unlawful, without a need to show market power or the contours of the relevant product market, *see In re Cipro Cases I & II*, 61 Cal. 4th 116, 146 (2015), but Plaintiff specifically alleges a "vertical" restraint,  Compl. ¶ 52, and no conduct that would fall into any *per se* categories.  Although Plaintiff loosely refers to Defendants "fix[ing]" prices or "allocat[ing]" the market, *see* Compl. ¶¶ 5, 49, 70 71, its mere incantation of those terms cannot overcome the lack of any allegation of any horizontal agreement involving GM Financial or any facts supporting any agreement to fix prices or allocate markets.  Price fixing refers to an agreement between head-to-head, horizontal competitors not to compete on price. *See Catalano, Inc. v. Target Sales, Inc.*, 446 U.S. 643, 647, 650 (describing "horizontal agreement[s] to fix prices" as the "archetypal example" of per se illegal conduct under Section 1 of the Sherman Act).  Market allocation refers to agreements between horizontal competitors to assign to each the territory in which it will operate, thus avoiding competition between them for customers in any of the assigned territories. *See United States v. Topco Assocs., Inc.*, 405 U.S. 596, 608 (1972) ("One of the classic examples of a per se violation of § 1 is an agreement between competitors at the same level of the market structure to allocate territories in order to minimize competition.").  Plaintiff challenges routine and clearly disclosed restrictions applicable to GM lessees and nothing remotely resembling price fixing or market allocation.

Plaintiff asserts in only the most conclusory fashion the existence of a market for the sale of use GM vehicles in California, Compl. ¶ 71, but fails completely to allege any facts in support of that implausible market definition. Plaintiff effectively concedes that it has alleged too narrow of a market when it alleges that consumers regularly seek to trade in GM vehicles for vehicles of other brands. And it also offers no facts to support its apparent position that consumers will not visit neighboring states to buy used cars. Finally, in describing the alleged effect on Plaintiff of the terms of GM Financial's leases, Plaintiff fails to account for obvious alternative supply sources of GM vehicles that ensure that it has the ability to compete with GM dealers and other unaffiliated dealers in the sale of used GM vehicles—*e.g.*, trade-ins of GM vehicles from consumers who purchased (rather than leased) a GM vehicle. Plaintiff has not alleged facts supporting any harm to competition under the rule of reason and its Cartwright Act claim must be dismissed.

### (a) Plaintiff's Alleged Product Market of Used GM Vehicles Is Contradicted By Its Own Allegations.

Plaintiff has failed to meet its obligation of pleading facts showing that GM Financial possesses market power within a relevant market because it alleges no facts demonstrating that consumers regard there to be no good substitutes for used GM vehicles—and, in fact, makes specific allegations to the contrary. A relevant antitrust product market "is composed of products that have reasonable interchangeability for the purpose for which they are produced." *Exxon Corp.*, 51 Cal. App. 4th at 1682. The market "must encompass the product at issue as well as all economic substitutes for the product." *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1120 (9th Cir. 2018) (quoting *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1045 (9th Cir. 2008)). To the extent Plaintiff alleges anything concerning the relevant antitrust product market, it vaguely suggests the existence of a market for used GM cars. *See* Compl. ¶ 7 ("market for the purchase, sale or trade-in of used GM vehicles"); ¶ 48 ("market for used GM vehicles"); ¶ 50 ("used GM-market");

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

¶ 71 ("market for used GM vehicles sold in California).  But Plaintiff alleges no facts that would support its implausible position that consumers do not view different car brands as interchangeable with GM cars.  Plaintiff in fact specifically alleges to the contrary, referring to circumstances in which a GM "lessee will take their GM to a non-GM brand dealer" to trade-in their leased GM car for a "non-GM vehicle," *id.* ¶ 31, as well as how a consumer can become "tired of driving [a] GM and now wants to lease a different brand vehicle," *id.* ¶ 40, or to "purchase . . . a competitor-brand vehicle."  *Id.* ¶ 42.  Plaintiff's recognition of the interchangeability between GM vehicles and those of other brands concedes that its narrow asserted market for only used GM vehicles is flawed, and its Cartwright Act claim is subject to dismissal. *See Humana Inc. v. Mallinckrodt ARD LLC*, No. 19-cv-06926, 2020 WL 3041309, at *3 (C.D. Cal. Mar. 9, 2020) (rejecting plaintiff's narrow market definition based on its own allegations of substitutability between its alleged products and others outside of the alleged market).

**(b)** **Plaintiff's Has Not Alleged and Cannot Plausibly Allege that Some Purchasers Would Not Cross State Lines to Buy A Used Car.**

Plaintiff also suggests vaguely that the state of California represents the geographic boundaries of the relevant market, *see* Compl. ¶ 71 (referring to a market for "used GM vehicles sold *in California*" (emphasis added)), but pleads no facts whatsoever to support the assertion that car dealers in neighboring states do not compete with California-based dealers and that consumers would not cross state lines in some instances to buy a used car.  "The geographic market extends to the 'area of effective competition' where buyers can turn for alternate sources of supply."  *Flagship Theatres of Palm Desert, LLC v. Century Theatres, Inc.*, 55 Cal. App. 5th 381, 414 (2020) (quoting *Otiz v. St. Peter's Community Hosp.*, 861 F.2d 1440, 1446 (9th Cir. 1988)).  Although it might be unlikely that consumers in some parts of the state would travel significant distances to purchase a used car from a

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

neighboring state,[4] Plaintiff offers no reason to believe that the state boundaries constitute an impermeable barrier to all California residents and pleads no facts to support its apparent position that such a barrier exists. It has therefore failed to meet its obligation of pleading facts supporting its proposed geographic market. "If the purchaser . . . can go beyond the defined market for supplies . . . , then the geographic market is too narrowly defined." *Id.* at 417 (quoting *Reading Int'l, Inc. v. Oaktree Capital Mgmt.*, No. 03-cv-1895, 2007 WL 39301, at *11 (S.D.N.Y. Jan. 8, 2007)).

> **(c)   Plaintiff Suffers No Harm from Its Inability to Purchase Leased GM Vehicles Because Nothing Prevents It from Buying GM Vehicles from Their Owners.**

Plaintiff's Cartwright Act claim is based on its alleged inability, due to its lack of access to leased GM vehicles, to compete in the sale of used GM vehicles in California. *See* Compl. ¶ 48. But previously leased vehicles are only one potential source for Plaintiff of used GM vehicles. Although Plaintiff acknowledges that Defendants' alleged conduct "will not impact vehicles which are purchased by consumers rather than leased," *id.*, Plaintiff does not account for this obvious alternative source still available to it in alleging that Defendants are attempting to "corner" the market for used GM vehicles. Because Plaintiff has access to alternative products with which to compete with GM dealers in the sale of used GM cars, nothing about the terms of GM Financial's leases restricts competition even in the artificially narrow "market" for the sale of use GM vehicles that Plaintiff appears to allege. Its continued ability to compete by obtaining GM vehicles from consumers who purchased (not leased) their GM vehicles provides an additional ground for dismissal of its Cartwright Act claim. *See People's Choice Wireless, Inc. v. Verizon*

---

[4] But even consumers who do not live close to the state border can purchase used cars through services like Carvana and have cars delivered to them, without regard to state boundaries. *See, e.g.*, https://www.carvana.com/help/pickup-and-delivery/will-carvana-deliver-to-me-for-free, describing Carvana's delivery process.

*Wireless*, 131 Cal. App. 4th 656, 666-67 (2005) (finding no harm to competition from Verizon policies that restricted unaffiliated dealers' access to new Verizon mobile phones because the dealers and others were able to sell alternative competing products).

Although Plaintiff might prefer to obtain used GM vehicles from lessees of those vehicles, the unambiguous terms of the lease state that lessees do not own the vehicles and that they are not allowed to assign the lease or transfer the vehicle to others. *See* Williams-Hill Decl., Exs. A, B & C at p.1 ("You are leasing the Vehicle and *have no ownership rights in the Vehicle* unless you exercise your purchase option" (emphasis added)) and ¶ 21 ("*If any of the following occurs, you will be in default under this Lease: . . . You assign the Lease or transfer the Vehicle without our prior written permission, or attempt to do either* . . . ." (emphasis in original)). Plaintiff does not directly challenge the terms of these leases but suggests that it is inappropriate for Defendants to deny to Plaintiff the same access to GM vehicles that Defendants allegedly provide to GM dealers. Compl. ¶ 47. Plaintiff is incorrect. Defendants have no "duty to deal under the terms and conditions preferred" by Plaintiff or to deal with Plaintiff at all. *Fed. Trade Comm'n v. Qualcomm Inc.*, 969 F.3d 974, 993 (9th Cir. 2020); *see also G.H.I.I. v. MTS, Inc.*, 147 Cal. App. 3d at 267 ("[T]he antitrust laws do not preclude a trader from unilaterally determining the parties with whom it will deal and the terms on which it will transact business.").

Plaintiff remains able to acquire used GM vehicles and compete with GM dealers in the sale of those vehicles, even if GM Financial's standard lease terms prevent it from acquiring vehicles directly from lessees. Plaintiff's Cartwright Act claim should be dismissed for failing to allege that Defendants engaged in any wrongful act that harms Plaintiff.

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

**B.    Plaintiff Has No Right Under California Law to Acquire Leased GM Vehicles and Its UCL Claim Must Be Dismissed.**

Based on the same facts that underpin its invalid Cartwright Act claim, Plaintiff also asserts a violation of California's Unfair Competition Law ("UCL"). The UCL, by its terms, prohibits "any unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. But the "unlawful" prong of the statute "is essentially an incorporation-by-reference provision" and provides a claim under the UCL only for violations of other statutes; "[w]hen a statutory claim fails, a derivative UCL claim also fails." *See Obesity Research Inst. v. Fiber Research Int'l, LLC*, 165 F. Supp. 937, 952-53 (S.D. Cal. 2016) (quoting *Aleksick v. 7-Eleven, Inc.*, 205 Cal. App. 4th 1176, 1185 (2012)). The "unfair" prong prohibits "conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws." *Id*. at 953 (citing *Cel-Tech Commc'ns v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 186-87 (1999)).

Plaintiff asserts that Defendants engaged in "unlawful" and "unfair" practices based on Defendants' abridgement of Plaintiff's alleged "statutory right to accept a trade-in vehicle for value," *see* Compl. ¶ 86, and a lessee's "right to terminate a lease contract at any time" and trade in their leased vehicles. *Id.* ¶ 100.[5]  Because the statutes on which Plaintiff bases its claim do not confer the rights Plaintiff asserts or establish a cause of action against GM Financial relating to the enforcement of the terms of GM Financial leases, Plaintiff has not alleged a violation of any statute and it cannot sustain its claim under the UCL.

Plaintiff bases its UCL claim principally on California Vehicle Code § 11709.4, which Plaintiff acknowledges does not "explicitly vest with all licensed

---

[5] Although Plaintiff does not appear to base its UCL claim on an alleged violation of the Cartwright Act, its failure to state a claim under the Cartwright Act would also defeat a claim under the UCL based on the same invalid Cartwright Act violation. *See Kunert v. Mission Fin. Servs. Corp.*, 110 Cal. App. 4th 242, 262-64 (rejecting application of UCL to resale price maintenance claim based on finding that allegations would not support that claim under the Cartwright Act).

dealers the ability to accept trade-ins." Compl. ¶ 34. This should end the inquiry under the "unlawful" prong because, without a statutory violation, there is no UCL violation. Yet Plaintiff still seeks to find in the Vehicle Code provision a "statutory right" to accept trade-ins, which it alleges has been impeded by Defendants. *Id.* ¶ 86. That provision states that a dealer that "purchases or obtains a vehicle in trade in" and agrees to pay any "credit or lease balance owing on the vehicle" must "tender the agreed amount . . . within 21 calendar days of purchasing or obtaining the vehicle in trade." Cal Vehicle Code § 11709.4. The legislative history of this provision, which was added to the Vehicle Code in 2009, makes it clear that it was intended to address a recurring problem with dealers like Plaintiff accepting trade-ins but becoming insolvent before paying lenders or lessors amounts owed by the consumer, leaving consumers facing "ruinous consequences, through no fault of their own." *See* Legislative Counsel's Digest, S.B. 95, October 11, 2009.[6]

Plaintiff is correct that nothing in Cal. Vehicle Code § 11709.4 comes close to "explicitly" establishing its statutory right to accept trade-ins, but incorrectly asserts that an implicit and enforceable right for it to do so regardless of the terms of a lease can be derived from this provision. *See* Compl. ¶¶ 33-35. Although the statute necessarily assumes the existence of trade-ins as it seeks to address the unmistakable legislative purpose of protecting consumers from unscrupulous dealers that accept trade-ins, that assumption cannot reasonably be read to imply an unconditional right of a dealer to accept trade-ins without regard to terms agreed to between the lessee and lessor. And even if it could, even Plaintiff does not suggest that the statute establishes a right of action against anyone alleged to have abridged its unfettered right to accept trade-ins, such that the statute could provide grounds for a UCL claim.

---

[6] *Available at* https://leginfo.legislature.ca.gov/faces/billNavClient.xhtml?bill_id=200920100SB95.

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

1     Plaintiff's UCL claim also rests on an alleged violation of California Civil

2   Code § 2987(f), *see* Compl. ¶¶ 36-37, which sets a cap on the "selling price of [a]

3   leased vehicle" if the lessee "terminates the lease and purchases the vehicle or trades

4   in the vehicle" prior to the scheduled expiration of the lease.  Cal. Civ. Code

5   § 2987(f).  Plaintiff does not allege that GM Financial prevented any lessee from

6   exercising its right under the lease to terminate its lease early or that any payments

7   by any lessee were inconsistent with the statute.  Plaintiff instead asserts that

8   consumers' right under this provision "to terminate their lease early" supports its

9   "statutory right to accept vehicle trade-ins." Compl. ¶¶ 37-38.  But, as with § 11709.4

10  of the Vehicle Code, not even Plaintiff alleges that this provision establishes a right

11  of action that Plaintiff could seek to enforce through its UCL claim.  Because

12  Plaintiff can point only to alleged implied rights under these provisions and no actual

13  statutory violation by GM Financial, Plaintiff's claim under the "unlawful" prong of

14  the UCL cannot stand and must be dismissed.

15     Plaintiff's claim under the "unfair" prong of the UCL also fails.  As discussed

16  above, alleged efforts by GM Financial to hold lessees to the terms of their leases

17  does not block Plaintiff from acquiring and competing in the sale of used GM cars,

18  much less the variety of reasonably interchangeable cars of other brands that are not

19  touched at all by the policies about which Plaintiff complains.  Because it remains

20  able to compete in the sale of used cars, it cannot meet its burden in pleading a UCL

21  claim of demonstrating that Defendants' conduct "violates the policy or spirit of the

22  antitrust laws because the effect of the conduct is comparable to or the same as a

23  violation of the antitrust laws" or that it "otherwise significantly threatens or harms

24  competition." *People's Choice Wireless*, 131 Cal App. 4th at 822-23.

25  ///

26  ///

27  ///

28  ///

## V.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's claims under the Cartwright Act and UCL must be dismissed.   Because Plaintiff could not plausibly establish the existence of harm to competition in the sale of used cars when Defendants' alleged conduct relates only to leased GM vehicles and does not in any way deprive Plaintiff of the ability to acquire and sell other GM cars and other brands of cars, any amendment of Plaintiff's complaint would be futile and dismissal *with prejudice* is required.

HOLLAND & KNIGHT LLP


By:   */s/ Zachary C. Frampton*
Zachary C. Frampton (SBN 303225)

Attorneys for Defendant
AMERICREDIT FINANCIAL SERVICES,
INC. D/B/A GM FINANCIAL

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450