**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
  Crystal Nix-Hines (Bar No. 326971)
  crystalnixhines@quinnemanuel.com
  Kevin Y. Teruya (Bar No. 235916)
  kevinteruya@quinnemanuel.com
  Claire Hausman (Bar No. 282091)
  clairehausman@quinnemanuel.com
  Brantley I. Pepperman (Bar No. 322057)
  brantleypepperman@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:   (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Defendant General Motors LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| CALABASAS LUXURY MOTORCARS, INC., on behalf of itself and all others similarly situated,<br><br>   Plaintiff,<br><br>  vs.<br><br>GENERAL MOTORS LLC; GENERAL MOTORS FINANCIAL COMPANY; and DOES 1 through 10, inclusive,<br><br>   Defendants. | Case No. 2:21-cv-09566-AB (PDx)<br><br>**DEFENDANT GENERAL MOTORS LLC'S NOTICE OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND TO STRIKE CLASS ALLEGATIONS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; REQUEST FOR JUDICIAL NOTICE**<br><br>Date: April 8, 2022<br>Time: 10:00 a.m.<br>Crtrm.: 7B<br><br>The Hon. André Birotte Jr.<br><br>Trial Date:  None Set |

## NOTICE OF MOTION AND MOTION TO DISMISS AND STRIKE

PLEASE TAKE NOTICE that on April 8, 2022, at 10:00 a.m. or on such other date as may be agreed upon or ordered, in Courtroom 7B of the United States District Court for the Central District of California, located at 350 W. 1st Street, Los Angeles, California, Defendant General Motors LLC will and hereby does move this Court to dismiss Plaintiff's class action complaint (Dkt. 1) and to strike the class allegations contained therein.[1]  This Motion is made pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(f), and is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Request for Judicial Notice and accompanying exhibits filed concurrently with this Motion, all pleadings and papers filed herein, oral argument of counsel, and any other matter that the Court may consider on this Motion.

---

[1]  This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on February 18, 2022.

# **<u>TABLE OF CONTENTS</u>**

<u>Page</u>

I.   PRELIMINARY STATEMENT ................................................................. 1

II.  RELEVANT ALLEGATIONS AND BACKGROUND ................................. 3

III. LEGAL STANDARDS ......................................................................... 5

IV.  ARGUMENT ...................................................................................... 6

    A.  Plaintiff Fails to State a Cartwright Act Claim ...................................... 6

        1.  Plaintiff Fails to Plead a "Conspiracy" ....................................... 7

            a.  Plaintiff's Conclusory Allegations Do Not Suffice ........... 7

            b.  As Corporate Siblings, GM and GMF Cannot "Conspire" ...................................................................... 10

        2.  Plaintiff Fails to Allege Essential Elements Under the Rule of Reason .............................................................................. 12

            a.  The Rule of Reason Governs Plaintiff's Cartwright Act Claim .......................................................................... 12

            b.  Plaintiff Fails to Allege Any Relevant Market ............... 13

            c.  Plaintiff Fails to Allege Any Defendant's Market Power .......................................................................... 15

        3.  Plaintiff Fails to Allege Any "Wrongful" Conduct ................... 15

    B.  Plaintiff Fails to State a UCL Claim .................................................. 18

        1.  Plaintiff's Conclusory Allegations Fail to Identify GM LLC's Role ............................................................................ 18

        2.  Plaintiff Fails to Allege that Legal Remedies are Inadequate ........................................................................... 18

        3.  Plaintiff Fails to Allege Any "Unlawful" Conduct ................... 19

        4.  Plaintiff Fails to Allege "Unfair" Conduct Under Any Applicable Test .................................................................... 22

    C.  The Court Should Dismiss Plaintiff's Claims with Prejudice .............. 25

    D.  The Court Should Strike Plaintiff's Class Allegations ........................ 25

V.   CONCLUSION .................................................................................. 25

1

## <u>TABLE OF AUTHORITIES</u>

2

**<u>Page</u>**

3

### <u>Cases</u>

4   *Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*,
5       836 F.3d 1171 (9th Cir. 2016) ........................................................... 16

*Apple, Inc. v. Psystar Corp.*,
6       586 F. Supp. 2d 1190 (N.D. Cal. 2008) ............................................... 7

7   *Asahi Kasei Pharma Corp. v. CoTherix, Inc.*,
8       204 Cal. App. 4th 1, 8 (2012) ........................................................... 10

9   *Ashcroft v. Iqbal*,
        556 U.S. 662 (2009) ........................................................................... 6

10  *Bay Area Surgical Mgmt. LLC v. Aetna Life Ins. Co.*,
11      166 F. Supp. 3d 988 (N.D. Cal. 2015) ................................................ 8

12  *Bell Atl. Corp. v. Twombly*,
        550 U.S. 544 (2007) ........................................................................... 6

13  *Brown Shoe Co. v. United States*,
14      370 U.S. 294 (1962) ......................................................................... 14

15  *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
16      20 Cal. 4th 163 (1999) ..................................................................... 22

17  *Chavez v. Whirlpool Corp.*,
        93 Cal. App. 4th 363 (2001) ............................................................. 23

18  *City of Oakland v. Oakland Raiders*,
19      445 F. Supp. 3d 587 (N.D. Cal. 2020) .............................................. 14

20  *City of San Jose v. Off. of the Com'r of Baseball*,
        776 F.3d 686 (9th Cir. 2015) ............................................................ 23

21  *Clark v. Am. Honda Motor Co.*,
22      528 F. Supp. 3d 1108 (C.D. Cal. 2021) ............................................ 19

23  *Clear Connection Corp. v. Comcast Cable Commc'ns Mgmt., LLC*,
24      2020 WL 6742889 (E.D. Cal. Nov. 17, 2020) ................................... 13

25  *Cont'l T. V., Inc. v. GTE Sylvania Inc.*,
        433 U.S. 36 (1977) ........................................................................... 16

26  *Copperweld Corp. v. Independence Tube Corp.*,
27      467 U.S. 752 (1984) ......................................................................... 10

28

*Coronavirus Reporter v. Apple Inc.*,
  2021 WL 5936910 (N.D. Cal. Nov. 30, 2021) ...................................................14

*Disney Enters., Inc. v. VidAngel, Inc.*,
  2017 WL 6883685 (C.D. Cal. Aug. 10, 2017) ....................................................6

*Drum v. San Fernando Valley Bar Assn.*,
  182 Cal. App. 4th 247 (2010) ..............................................................22, 23, 24

*Early v. Becerra*,
  47 Cal. App. 5th 325 (2020) .............................................................................21

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
  751 F.3d 990 (9th Cir. 2014) ..............................................................................6

*Exxon Corp. v. Superior Ct.*,
  51 Cal. App. 4th 1672 (1997) ...........................................................................13

*Fed. Trade Comm'n v. Qualcomm Inc.*,
  969 F.3d 974 (9th Cir. 2020) ............................................................................16

*Fisherman's Wharf Bay Cruise Corp. v. Superior Ct. of San Francisco*,
  114 Cal. App. 4th 309 (2003) .............................................................................7

*Flaa v. Hollywood Foreign Press Ass'n*,
  2021 WL 1399297 (C.D. Cal. Mar. 23, 2021) ..................................................13

*Flagship Theatres of Palm Desert, LLC v. Century Theatres, Inc.*,
  198 Cal. App. 4th 1366 (2011) ...........................................................................8

*Freeman v. San Diego Ass'n of Realtors*,
  322 F.3d 1133 (9th Cir. 2003) ..........................................................................10

*Freeman v. San Diego Ass'n of Realtors*,
  77 Cal. App. 4th 171 (1999) .............................................................................10

*Frost v. LG Electronics Inc.*,
  2018 WL 6256790 (N.D. Cal. July 9, 2018) ......................................................9

*G.H.I.I. v. MTS, Inc.*,
  147 Cal. App. 3d 256 (1983) ............................................................................16

*Garon v. eBay, Inc.*,
  2011 WL 6329089 (N.D. Cal. Nov. 30, 2011) ..................................................20

*Gibson v. Jaguar Land Rover N. Am., LLC*,
  2020 WL 5492990 (C.D. Cal. Sept. 9, 2020) ...................................................19

*Gingery v. City of Glendale*,
  831 F.3d 1222 (9th Cir. 2016) ............................................................................6

*Goldsmith v. CVS Pharmacy, Inc.*,
   2020 WL 3966004 (C.D. Cal. May 5, 2020) ................................................. 19, 23

*Greene v. Select Funding, LLC*,
   2021 WL 4926495 (C.D. Cal. Feb. 5, 2021) ...................................................... 25

*Hambrick v. Healthcare Partners Med. Group, Inc.*,
   238 Cal. App. 4th 124 (2015) .............................................................................. 18

*Hodsdon v. Mars, Inc.*,
   891 F.3d 857 (9th Cir. 2018) ............................................................................... 23

*In re ATM Fee Antitrust Litig.*,
   768 F. Supp. 2d 984 (N.D. Cal. 2009) ................................................................ 14

*In re California Bail Bond Antitrust Litig.*,
   2020 WL 3041316 (N.D. Cal. Apr. 13, 2020) ...................................................... 8

*In re German Auto. Manufacturers Antitrust Litig.*,
   392 F. Supp. 3d 1059 (N.D. Cal. 2019) .............................................................. 17

*In re German Auto. Mfrs. Antitrust Litig.*,
   497 F. Supp. 3d 745 (N.D. Cal. 2020) .............................................................. 5, 6

*In re Libor-Based Fin. Instruments Antitrust Litig.*,
   2015 WL 4634541 (S.D.N.Y. Aug. 4, 2015) ..................................................... 10

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   586 F. Supp. 2d 1109 (N.D. Cal. 2008) ............................................................... 9

*Kendall v. Visa U.S.A., Inc.*,
   518 F.3d 1042 (9th Cir. 2008) ........................................................................... 7, 8

*Leadsinger, Inc. v. BMG Music Publ'g*,
   512 F.3d 522 (9th Cir. 2008) ................................................................................ 6

*Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*,
   847 F.3d 1221 (10th Cir. 2017) .......................................................................... 10

*Lozano v. AT & T Wireless Servs., Inc.*,
   504 F.3d 718 (9th Cir. 2007) ............................................................................... 24

*Marsh v. Anesthesia Servs. Med. Group, Inc.*,
   200 Cal. App. 4th 480 (2011) ............................................................................... 7

*Mercedes-Benz Credit Corp. v. Johnson*,
   110 Cal. App. 4th 53 (2003) ............................................................................... 21

*Nebraska-Iowa Car Wash, Inc. v. Mobil Oil Corp.*,
   1976 WL 1248 (N.D. Iowa Apr. 2, 1976) .......................................................... 17

*NorthBay Healthcare Group, Inc. v. Kaiser Found. Health Plan, Inc.*,
    2017 WL 6059299 (N.D. Cal. Dec. 7, 2017) ......................................................9

*NSS Labs, Inc. v. Symantec Corp.*,
    2019 WL 3804679 (N.D. Cal. Aug. 13, 2019) ..................................................15

*O&C Creditors Grp., LLC v. Stephens & Stephens XII, LLC*,
    42 Cal. App. 5th 546 (2019) ............................................................................21

*P & K Prop., LLC v. Hartford Cas. Ins. Co.*,
    2013 WL 556804 (N.D. Cal. Feb. 12, 2013) ....................................................21

*Palmer v. BRG of Georgia, Inc.*,
    498 U.S. 46 (1990) ............................................................................................17

*Pelayo v. Hyundai Motor Am., Inc.*,
    2021 WL 1808628 (C.D. Cal. May 5, 2021) ....................................................19

*Porter v. Bates*,
    2012 WL 4040347 (N.D. Cal. Sept. 11, 2012) ................................................25

*Sanders v. Apple Inc.*,
    672 F. Supp. 2d 978 (N.D. Cal. 2009) ............................................................25

*Sausalito Pharmacy, Inc. v. Blue Shield of California*,
    544 F. Supp. 230 (N.D. Cal. 1981) ..................................................................16

*Schertzer v. Bank of Am., N.A.*,
    445 F. Supp. 3d 1058 (S.D. Cal. 2020) ...........................................................24

*Schroeder v. United States*,
    569 F.3d 956 (9th Cir. 2009) ............................................................................19

*Shahinian v. Med. Staff of Los Robles Hosp. & Med. Ctr.*,
    2016 WL 9045473 (C.D. Cal. Feb. 2, 2016) ......................................................6

*Somerville v. Stryker Orthopaedics*,
    2009 WL 113369 (N.D. Cal. Jan. 16, 2009) ....................................................12

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) ......................................................................18, 19

*Stanislaus Food Prod. Co. v. USS POSCO Indus.*,
    782 F. Supp. 2d 1059 (E.D. Cal. 2011) .............................................................9

*Stanislaus Food Prod. Co. v. USS-POSCO Indus.*,
    2010 WL 3521979 (E.D. Cal. Sept. 3, 2010) ....................................................9

*Streamcast Networks, Inc. v. Skype Techs., S.A.*,
    547 F. Supp. 2d 1086 (C.D. Cal. 2007) ...........................................................14

*Sumotext Corp. v. Zoove, Inc.*,
   2016 WL 6524409 (N.D. Cal. Nov. 3, 2016) ......................................................14

*Tellone Pro. Ctr. LLC v. Allstate Ins. Co.*,
   2021 WL 1254360 (C.D. Cal. Jan. 26, 2021)......................................................25

*Theme Promotions, Inc. v. News Am. Mktg. FSI*,
   546 F.3d 991 (9th Cir. 2008) .........................................................................13, 15

*Thomas v. Amerada Hess Corp.*,
   393 F. Supp. 58 (M.D. Pa. 1975)........................................................................17

*Tidmore Oil Co. v. BP Oil Co.*,
   932 F.2d 1384 (11th Cir. 1991) ..........................................................................16

*Total Benefits Planning Agency Inc. v. Anthem Blue Cross & Blue Shield*,
   630 F. Supp. 2d 842 (S.D. Ohio 2007) ..............................................................11

*TRBR, Inc. v. Americredit Fin. Servs., Inc.*,
   2021 WL 4522306 (E.D. Mich. Oct. 4, 2021)..............................................11, 12

*Vargas v. JP Morgan Chase Bank, N.A.*,
   2014 WL 3435628 (C.D. Cal. July 11, 2014) ....................................................18

*William Morris Endeavor Ent., LLC v. Writers Guild of Am.*,
   478 F. Supp. 3d 932 (C.D. Cal. 2020) ...............................................................15

## Statutory Authorities

Cal. Civ. Code § 2987...............................................................................3, 19, 23

Cal. Civ. Code § 2987(a)(1) ...............................................................................21

Cal. Civ. Code § 2987(b).....................................................................................21

Cal. Com. Code § 10303(g)..................................................................................21

Cal. Penal Code § 571(a)(1).................................................................................22

Cal. Veh. Code § 11709.4 ................................................................3, 19, 20, 23

Cal. Veh. Code § 11709.4(a)(1) ..........................................................................20

## Additional Authorities

ABA Section of Antitrust Law, <u>Antitrust Law Developments</u>
   (8th ed.)................................................................................................................17

*Antitrust and Unfair Competition Law Section, State Bar, Cal. State Antitrust
   and Unfair Competition Law* (2021) ...................................................................17

Phillip E. Areeda & Herbert Hovenkamp, <u>Antitrust Law</u>
   (5th ed. 2021)...............................................................................................10, 16

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      PRELIMINARY STATEMENT**

Plaintiff Calabasas Luxury Motorcars, Inc., a used automobile dealer that is unaffiliated with General Motors, requests that the Court grant it rights California's antitrust and unfair competition laws do not confer.  Specifically, Plaintiff's barebones Complaint alleges a supposed, wrongful "conspiracy" under California's Cartwright Act and Unfair Competition Law ("UCL") between General Motors LLC ("GM LLC") and AmeriCredit Financial Services, Inc. ("GMF") (incorrectly sued as General Motors Financial Company, Inc.) to "restrict" the supply of GM vehicles. But Plaintiff pleads no non-conclusory, factual allegations regarding any purported Cartwright conspiracy, or "unlawful" or "unfair" conduct under the UCL.  In fact, Plaintiff alleges **no** facts whatsoever regarding GM LLC specifically.   Instead, Plaintiffs appears to challenge the decision of an automobile lessor—here, GMF—to choose for itself the terms by which it makes its vehicles available to others during their leases, including whether to do so at all.  But the right to determine with whom to conduct business dealings is **lawful** under both the Cartwright Act and the UCL. Plaintiff has no legal right to compel GMF to deal directly with unaffiliated dealers on terms of their choosing.   Plaintiff's theories—clearly designed to enhance its bottom line—would undermine these laws by constraining the freedom of companies to determine their own operations and business partners while overregulating lawful conduct the antitrust and unfair competition laws were never intended to reach. Dismissal is warranted on five independently sufficient grounds:

**First**, the sparse allegations in Plaintiff's Complaint fail to state a claim because they do not meet basic pleading requirements.   Despite the Ninth Circuit's requirements to allege an antitrust conspiracy, the pleading does not answer the basic questions: "who, did what, to whom (or with whom), where, and when?"   For example, Plaintiff includes no allegations regarding GM LLC's purported role in the challenged conduct, *i.e.*, to whom and on what terms GMF makes its owned vehicles

available during their leases.  Far from suggesting any conspiratorial conduct, Plaintiff's allegations are consistent with GMF's exercise of its own decision-making regarding its property.  Plaintiff's talismanic recitations of the words "contract, combination, or conspiracy" do not suffice to state an antitrust claim.

*Second*, even if the Court looks past Plaintiff's threadbare allegations of a purported conspiracy, the defendants in this action—GM LLC and GMF—are wholly-owned subsidiaries of the same, ultimate corporate parent: General Motors Company.  Under well-recognized antitrust principles, they are incapable of "combining" or "conspiring" for antitrust purposes, dooming Plaintiff's claims.

*Third*, Plaintiff's allegations of a "vertical agreement" subject its Cartwright Act claim to the rule of reason.  But Plaintiff fails to allege the essential elements required to state a claim under the rule of reason, including the existence of a relevant antitrust market, or any Defendant's purported market power.  These fatal deficiencies provide yet another basis for dismissal of Plaintiff's Cartwright Act claim.

*Fourth*, the Cartwright Act only prohibits acts that are "wrongful."  Plaintiff speculates that GMF's leased vehicles are now worth more than the purchase prices specified in GMF's leases with consumers.  According to Plaintiff, GMF must therefore allow ***Plaintiff*** to purchase its vehicles at those purportedly below-market prices—set forth in leases to which Plaintiff is not a party—so Plaintiff can acquire and sell them for profit.  But the Cartwright Act does not usurp a company's freedom to conduct its business as it sees fit, require an automobile lessor to make available its property to any and all third parties, or mandate the lessor to do so on terms third parties deem favorable.  To the contrary, as the case law makes clear, the Cartwright Act protects a company's rights to transact with whomever it pleases, and to choose the terms by which it will do business with others (including whether to do so at all).

*Finally*, the Court should reject Plaintiff's efforts to recast its flawed allegations as a UCL claim.  As an initial matter, Plaintiff's conclusory allegations do not even include any allegations regarding GM LLC, specifically.  On this basis alone,

the UCL claim against GM LLC should be dismissed.  Moreover, since the UCL provides only equitable relief, Plaintiff must establish why legal remedies are inadequate.  The Complaint does just the opposite; instead of claiming that money damages are inadequate, Plaintiff expressly seeks "damages," including as a "result of Defendants' acts and practices in violation of the UCL[.]"  Compl. ¶ 91.

Plaintiff's attempts to state claims under the UCL's "unlawful" and "unfair" prongs fare no better.  Plaintiff does not adequately allege a violation of any "borrowed" law: none of the provisions Plaintiff cites—the Cartwright Act, Vehicle Code § 11709.4, or Civil Code § 2987—lend any support to Plaintiff's theories that GMF must make its owned assets (its leased vehicles) available to Plaintiff or other unaffiliated dealers at their demand.  To the contrary, California law is clear: a firm may choose with whom it does business, including prohibiting non-parties to a vehicle lease from exercising the lessee's interests (including any purchase option).

Nor do Plaintiff's vague allegations establish a violation of the UCL's "unfair" prong.  The California Supreme Court has cautioned that courts must be "careful" in construing what conduct is "unfair" so as to not enjoin valid business conduct (including conduct that benefits competition).  Given Plaintiff's failure to allege any violation of any law, allowing Plaintiff to nonetheless shoehorn its flawed theories into the "unfair" prong would do just that.  In any case, Plaintiff alleges no conduct that is "unfair" under any of the various tests that courts employ in UCL cases.

Since none of these fatal deficiencies can be cured by amendment, the Complaint should be dismissed with prejudice.  Moreover, Plaintiff's Complaint defines an improper "fail-safe" class, and its class allegations should be stricken.

## II.   RELEVANT ALLEGATIONS AND BACKGROUND

Plaintiff is a used automobile dealer that is unaffiliated with GM and based in Calabasas, California.  Compl. ¶¶ 7–8.  As set forth below, GM LLC and GMF are both ultimate, wholly-owned subsidiaries of their common parent, General Motors Company.



GM LLC's Request for Judicial Notice ("RJN"), Exs. D, E.  GMF "offer[s] loan and lease finance products[.]"  RJN, Ex. A at 5.  GM LLC manufactures and distributes vehicles to its licensed dealers.  Licensed automobile dealers sell used vehicles to California consumers, not GM LLC or GMF.

Plaintiff filed this putative class action against GM LLC and GMF on December 10, 2021, seeking to represent "all non-GM vehicle dealerships in California whose [supposed] rights to accept trade-in vehicles and purchase GM leased vehicles have [purportedly] been violated as a result of Defendants' wrongful conduct."  Compl. ¶ 64. The Complaint asserts violations of the Cartwright Act and UCL and seeks damages, injunctive relief, attorneys' fees and costs, and interest.

Plaintiff's allegations center on the ways in which leased vehicles are sold during or at the conclusion of their leases.  Generally, a consumer may either purchase a vehicle outright, or lease it.  When the consumer leases a vehicle, the consumer (the "lessee") pays a "monthly lease payment" to the "lessor" (the owner of the vehicle) so that the lessee can effectively loan the vehicle and drive it for a contractually-specified "lease term[.]"  Compl. ¶¶ 24–27.  The "lessee" does *not* own the vehicle, but may, contractually, "purchase the vehicle during the term of the lease, or at the end of the lease" from the lessor.  *Id*. ¶ 28.  The price at which the leased vehicle may be purchased is specified in the lease.  *Id.* ¶ 26.  When a consumer owns an automobile, the consumer may also complete a "trade-in," where a dealer takes title to the consumer's vehicle in exchange for it "as a down payment for the purchase or

lease of another vehicle."  Compl. ¶ 29.  Plaintiff alleges that a consumer previously could trade in a ***leased*** vehicle by "tak[ing] their GM [sic] to a non-GM brand dealer" and then "transferring their GM lease's purchase option over to the different brand dealer[.]"  *Id*. ¶ 31.  The "dealer [would] utilize the residual value of the 'trade in' towards the consumer's purchase or lease of a new, non-GM vehicle."  *Id*.

Plaintiff alleges that due to "the [COVID-19] pandemic, there has been a severe disruptions [sic] to the global supply chain of motor vehicles."  Compl. ¶ 22.  Plaintiff alleges "this confluence of low supply and high demand has catapulted used and new car prices to record highs," such that "lessees whose leases terms have not yet expired have found themselves in possession of a vehicle value whose market value was worth significantly more than the amounts owed on their respective leases[.]"  *Id*. ¶¶ 23–24.  Thus, if a "***consumer*** exercises the purchase option" in a lease to "trade-in" or purchase a leased vehicle for the value specified in a lease, the consumer may "trade-in or sell their vehicle for a significant profit."  *Id*. ¶¶ 25–30 (emphasis added).

Notably, despite being an unaffiliated used car dealer, Plaintiff does not allege that it cannot acquire GM vehicles at all; indeed, Plaintiff may purchase used GM vehicles (that are not leased), and GM vehicles that were previously leased but paid off by a lessee.  Plaintiff instead complains that it supposedly lost a right it does not have, namely, that it is not permitted to acquire these vehicles on the terms ***it*** deems fit because it is denied the "***privilege***" of the "purchase option contained" in the leases to which it is not a party.  Compl. ¶¶ 32, 39–43, 58 (emphasis added).  Plaintiff attributes this to a purported "conspiracy" between GM LLC and GMF—corporate siblings owned by the same parent—"to eliminate competition by refusing to allow non-GM dealerships to accept their leased vehicles as a trade-in and refusing to allow consumers to sell their [leased] vehicles to non-GM dealerships."  *Id*. ¶¶ 3, 7.

## III.   <u>LEGAL STANDARDS</u>

Dismissal is required "when a complaint lacks either a cognizable legal theory or sufficient facts alleged under such a theory."  *In re German Auto. Mfrs. Antitrust*

1   *Litig.*, 497 F. Supp. 3d 745, 753 (N.D. Cal. 2020) (citations omitted). "Whether a

2   complaint contains sufficient factual allegations depends on whether it pleads enough

3   facts to 'state a claim to relief that is plausible on its face.'" *Id.* (citing *Ashcroft v.*

4   *Iqbal*, 556 U.S. 662, 678 (2009)). "Threadbare recitals of the elements of a cause of

5   action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at

6   678. Moreover, a "motion to dismiss is particularly sensible in an antitrust case

7   because the costs of discove[r]y can be prohibitive." *Shahinian v. Med. Staff of Los*

8   *Robles Hosp. & Med. Ctr.*, 2016 WL 9045473, at *1 (C.D. Cal. Feb. 2, 2016) (Wilson,

9   J.). Indeed, the expense of antitrust discovery authorizes district courts "to insist upon

10  some specificity in pleading before allowing a potentially massive factual controversy

11  to proceed." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

12          Ultimately, evaluating a complaint's allegations "requires the reviewing court

13  to draw on its judicial experience and common sense." *Eclectic Props. E.*, *LLC v.*

14  *Marcus & Millichap Co.*, 751 F.3d 990, 995–96 (9th Cir. 2014). In doing so, "[c]ourts

15  must consider the complaint in its entirety, as well as other sources courts ordinarily

16  examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents

17  incorporated into the complaint by reference, and matters of which a court may take

18  judicial notice." *German Auto. Mfrs. Antitrust Litig.*, 497 F. Supp. 3d at 753–54.

19          "The decision of whether to grant leave to amend" is "within the discretion of

20  the district court[.]" *Leadsinger*, *Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th

21  Cir. 2008). Leave to amend is properly denied where a plaintiff "ha[s] not identified

22  any additional allegations that could save [its] complaint from dismissal." *Gingery v.*

23  *City of Glendale*, 831 F.3d 1222, 1231 (9th Cir. 2016); *accord Disney Enters.*, *Inc. v.*

24  *VidAngel*, *Inc.*, 2017 WL 6883685, at *10 (C.D. Cal. Aug. 10, 2017) (Birotte, J.).

25                              IV.   <u>ARGUMENT</u>

26  **A.   <u>Plaintiff Fails to State a Cartwright Act Claim</u>**

27          Plaintiff has not adequately pleaded a Cartwright Act claim. "The Cartwright

28  Act prohibits every trust, defined as 'a combination of capital, skill or acts by two or

more persons' for specified anticompetitive purposes." *Fisherman's Wharf Bay Cruise Corp. v. Superior Ct. of San Francisco*, 114 Cal. App. 4th 309, 334 (2003). To state a claim, Plaintiff must therefore allege: "the formation and operation of the conspiracy," and "the wrongful act or acts done pursuant thereto[.]" *Marsh v. Anesthesia Servs. Med. Group*, *Inc.*, 200 Cal. App. 4th 480, 493 (2011). Because Plaintiff fails to adequately allege these elements, the Court should dismiss its claim.

### 1.   *Plaintiff Fails to Plead a "Conspiracy"*

The Cartwright Act "does not address unilateral conduct." *Apple, Inc. v. Psystar Corp.*, 586 F. Supp. 2d 1190, 1203 (N.D. Cal. 2008). To state a Cartwright Act claim, Plaintiff must therefore adequately allege conduct involving two or more independent firms. But Plaintiff's conclusory allegations fail because they nowhere allege GM LLC's purported role in the conduct, ***and*** are based on a purported "conspiracy" that is not cognizable between siblings of the same corporate parent.

### a.   **Plaintiff's Conclusory Allegations Do Not Suffice**

Plaintiff baldly alleges that "Defendants and their co-conspirators, entered into a continuing contract, combination, or conspiracy to unreasonably restrain trade and commerce[.]" Compl. ¶ 69. "[T]to allege an agreement between antitrust co-conspirators, the complaint must allege facts such as a "***specific time, place, or person involved*** in the alleged conspiracies to give a defendant seeking to respond to allegations of a conspiracy an idea of where to begin." *Kendall v. Visa U.S.A.*, *Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008) (emphasis added) (internal citation omitted). Accordingly, a complaint alleging a purported antitrust conspiracy must therefore "answer the basic questions: who, did what, to whom (or with whom), where, and when?" *Id.* at 1048. Plaintiff's Complaint fails to answer these basic questions.

**<u>Plaintiff Fails to Allege the "Who".</u>**   Plaintiff conclusorily alleges that "Defendants have conspired," and then names as defendants GM LLC and GMF. *E.g.*, Compl. ¶¶ 3, 9, 11. But Plaintiff includes no allegations meaningfully describing the individuals that purportedly participated in any "conspiracy." Based merely on

one online article, Plaintiff identifies only an: (1) an unnamed, GMF "spokesperson"; (2) GMF's Vice President of U.S. Sales and Credit; and (3) "a dealer principal of Michigan Group[.]" Compl. ¶¶ 54–56. Plaintiff thus fails to identify a single person associated with GM LLC that purportedly had any role whatsoever in the challenged conduct. The Ninth Circuit has made clear that a "bare allegation of a conspiracy is almost impossible to defend against, particularly where the defendants are large institutions with hundreds of employees entering into contracts and agreements daily." *Kendall*, 518 F.3d at 1047 (dismissing antitrust conspiracy claim). Courts therefore dismiss antitrust claims where the complaint fails to identify individuals associated with the supposed "conspiracy." *See Bay Area Surgical Mgmt. LLC v. Aetna Life Ins. Co.*, 166 F. Supp. 3d 988, 995 (N.D. Cal. 2015) ("simply alleging that E3, Aetna, and United conspired is not a sufficient allegation of the 'who.'").

**<u>Plaintiff Fails to Allege the "What"</u>.** Plaintiff's Complaint contains repeated references to "Defendants" and a purported "conspiracy" to "refus[e] to allow non-GM dealerships to accept their leased vehicles as a trade-in and refus[e] to allow consumers to sell their vehicles to non-GM dealerships." *E.g.*, Compl. ¶ 3. But the Complaint must allege "***who, did what***[.]" *Kendall*, 518 F.3d at 1048 (emphasis added). Put differently, the Complaint must "include allegations ***specific to each defendant alleging that defendant's role*** in the alleged conspiracy." *In re California Bail Bond Antitrust Litig.*, 2020 WL 3041316, at *14 (N.D. Cal. Apr. 13, 2020).

Plaintiff includes ***no allegations whatsoever*** regarding GM LLC's specific, purported role in the challenged conduct, instead referring generically to "Defendants." *See, e.g.*, Compl. ¶ 57.[2] Courts regularly dismiss antitrust conspiracy claims where, as here, the claims "group" defendants and provide no indication of

---

[2]   To the contrary, the complaint suggests that the challenged conduct is GMF's decision, *see* Compl. ¶ 54, which is entirely consistent with unilateral and therefore legal—rather than conspiratorial—conduct. *See Flagship Theatres of Palm Desert, LLC v. Century Theatres, Inc.*, 198 Cal. App. 4th 1366, 1386 (2011) ("Cartwright Act applies only to a 'combination' . . . not to *unilateral* conduct.") (emphasis in original).

each defendant's purported role.  *See NorthBay Healthcare Group*, *Inc. v. Kaiser Found. Health Plan*, *Inc.*, 2017 WL 6059299, at *8 (N.D. Cal. Dec. 7, 2017) (claim dismissed because "[g]eneral allegations as to all defendants are insufficient") (citations omitted); *see In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1117 (N.D. Cal. 2008) ("***general allegations as to all defendants***, to 'Japanese defendants,' ***or to a single corporate entity*** such as 'Hitachi' ***is insufficient***") (emphases added); *Stanislaus Food Prod. Co. v. USS-POSCO Indus.*, 2010 WL 3521979, at *18 (E.D. Cal. Sept. 3, 2010) (dismissing antitrust claims because "***[t]he allegations do not identify what defendant did what***") (emphasis added).

**Plaintiff Fails to Allege the "Where" or "When".**  Plaintiff's Complaint is similarly deficient as to the "where" or "when" of the purported "conspiracy."  Indeed, Plaintiff's Complaint includes ***no*** allegations regarding "where" the decision to engage in the challenged conduct was made.  Courts have dismissed antitrust conspiracy claims where the complaint includes at least ***some*** indication regarding where the conspiracy purportedly was hatched.  *See Frost v. LG Electronics Inc.*, 2018 WL 6256790, at *4 (N.D. Cal. July 9, 2018) (dismissing antitrust conspiracy claim alleging agreement reached in particular cities because no allegations regarding "any detail as to *where* in those very large cities the parties met (if they did).").

As to the "when," Plaintiff once again cites the same article for the assertion that "GM Financial will stop working with non-General Motors dealerships on off-lease vehicle payoffs ***starting July 1*** to ensure GM dealerships have priority access to the vehicles coming back to market."  Compl. ¶ 57 (emphasis added).  While this lone allegation may indicate when the complained-of policy purportedly began, it says nothing as to when the purported "conspiracy" to implement that policy was consummated.  *See Frost*, 2018 WL 6256790, at *4 (noting that complaint should "explain . . . when any such agreement was ***consummated***") (emphasis added); *cf. Stanislaus Food Prod. Co. v. USS POSCO Indus.*, 782 F. Supp. 2d 1059, 1075 (E.D. Cal. 2011) (similar, where only alleged that agreement "entered" into in "2006").

### b.   As Corporate Siblings, GM and GMF Cannot "Conspire"

The substance of Plaintiff's antitrust claim provides another, independent basis for dismissal.  Plaintiff alleges a conspiracy between GM LLC (the manufacturing entity) and GMF (the leasing entity).  Compl. ¶¶ 1–3, 9, 11.  But GM LLC and GMF are wholly-owned subsidiaries of a common corporate parent: General Motors Company.  These corporate siblings cannot "combine" to supply the multilateral conduct necessary to state a Cartwright Act claim.

A "Cartwright Act violation requires 'a **combination** of capital, skill or acts by **two or more persons**' that seeks to achieve an anticompetitive end." *Asahi Kasei Pharma Corp. v. CoTherix, Inc.*, 204 Cal. App. 4th 1, 8, (2012) (emphases added). Accordingly, "[o]nly separate entities pursuing separate economic interests can conspire within the proscriptions of the" Cartwright Act. *Freeman v. San Diego Ass'n of Realtors*, 77 Cal. App. 4th 171, 189 (1999) (citing *Copperweld Corp. v. Independence Tube Corp.* 467 U.S. 752, 769–771 (1984)).  For these reasons, many state and federal courts have held that "[c]onspiracy within a single corporate enterprise does not violate the Cartwright Act."[3]  *In re Libor-Based Fin. Instruments Antitrust Litig.*, 2015 WL 4634541, at *87 n.127 (S.D.N.Y. Aug. 4, 2015).

Here, Plaintiff alleges that GM LLC and GMF "conspired" to refuse "to allow

---

[3]   A corporate parent and its wholly-owned subsidiary generally may not conspire for federal antitrust purposes. *Copperweld*, 467 U.S. at 769–771.  Courts have extended these principles to apply to other corporate relationships, including corporate siblings. *See, e.g.*, *Freeman v. San Diego Ass'n of Realtors*, 322 F.3d 1133, 1147 (9th Cir. 2003) ("The single-entity rule . . . applies to subsidiaries controlled by a common parent"); *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1233 (10th Cir. 2017) (similar, noting unanimity of "every circuit to address the question"); Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law §§ 1464f, 1464f n.33 (5th ed. 2021) ("virtually unanimous" that courts "deny conspiratorial capacity to sibling corporations' dealings with each other.").  And while federal antitrust principles are "not dispositive on Cartwright Act issues," they are "often helpful," which is why several districts of the California Court of Appeal have applied the single-enterprise rule to Cartwright Act claims. *See Asahi*, 204 Cal. App. 4th at 10–11, 11 n.13.

non-GM dealerships to accept their leased vehicles as a trade-in" and "to allow consumers to sell their vehicles to non-GM dealerships."  Compl. ¶¶ 3, 9, 11.  They cannot legally conspire, however, because they are sister corporations.  As stated in public filings with the Securities and Exchange Commission, GM LLC and GMF are each indirect, wholly-owned subsidiaries of General Motors Company.  *See* RJN, Exs. A at 5; Ex. B at 1, 93; C at 45.  The corporate disclosure statements that GM LLC and GMF filed in this matter likewise establish this relationship.[4]  RJN, Exs. D, E.

As explained in GM LLC's accompanying request for judicial notice, the Court may consider facts from these SEC filings and corporate disclosure statements—either of which independently corroborates GM LLC's and GMF's corporate sibling relationship—in evaluating a motion to dismiss.  *See* RJN at 3–4.  For example, in *Total Benefits Planning Agency Inc. v. Anthem Blue Cross & Blue Shield*, the court determined that the court could take judicial notice of—and consider at the pleading stage—"documents which were a part of a publicly-filed annual statement," as well as "previously filed Corporate Disclosure Statements with this Court," because "these are sources whose accuracy cannot reasonably be questioned."  630 F. Supp. 2d 842, 849 (S.D. Ohio 2007).  The court then dismissed an antitrust conspiracy claim because those documents established that the defendants were "sister corporations which are wholly owned and controlled by their parent" and "were unable to combine[.]"  *Id.*

In another antitrust conspiracy case in which GM LLC and GMF were defendants, they submitted corporate disclosure statements which established that they were both wholly-owned by General Motors Company.[5]  *See* RJN, Exs. F; G at

---

[4]   As stated *supra*, GM LLC is a wholly-owned subsidiary of General Motors Holdings LLC, which is a wholly-owned subsidiary of General Motors Company; GMF is a wholly-owned subsidiary of General Motors Financial Company, Inc., which is a wholly-owned subsidiary of General Motors Holdings LLC, which is a wholly-owned subsidiary of General Motors Company.  RJN, Exs. D, E.

[5]   In *TRBR*, the defendants were GM LLC and GMF.  Plaintiff here named General Motors Financial Company, Inc., rather than GMF (GMF is its wholly-owned

2.   The court in that case then ***dismissed with prejudice*** a federal antitrust claim involving GM LLC and GMF, determining that because they were each wholly-owned subsidiaries of General Motors Company, they could not conspire for antitrust purposes.  *See TRBR, Inc. v. Americredit Fin. Servs.*, *Inc.*, 2021 WL 4522306, at *6 (E.D. Mich. Oct. 4, 2021) (dismissing claim because "***the record conclusively shows that GM and GMF are wholly-owned corporate siblings, with General Motors Company as a shared parent***.") (emphasis added).  The court made this determination based on corporate disclosure statements filed in that case, explaining that it could, on a motion to dismiss, "consider these records because they are public information" and "central to Plaintiffs' allegations."  *Id*.

      For the foregoing reasons, GM LLC and GMF cannot "conspire" or "combine" for antitrust purposes.  Plaintiffs' vague, conclusory, and unsubstantiated references to a conspiracy with "Doe Defendants" and unnamed "subsidiaries, agents, or co-conspirators" and "franchisees" (Compl. ¶¶ 5, 13, 52) do not cure these fatal deficiencies because they provide no additional factual allegations regarding "who", "what", "where", and "when."  *See Somerville v. Stryker Orthopaedics*, 2009 WL 113369, at *2–*3 (N.D. Cal. Jan. 16, 2009) (dismissing Cartwright Act claim because "there can be no conspiracy between related entities" and "their subsidiaries," notwithstanding allegations of "unnamed co-conspirators," since "[t]here are no facts indicating the identifies of any" of purported co-conspirators, "no factual allegations indicating when or where" named defendants "entered any of the alleged illegal agreements with the unnamed co-conspirators," and "no factual allegations indicating the terms of any such agreements.").

### 2.   *Plaintiff Fails to Allege Essential Elements Under the Rule of Reason*

#### a.   **The Rule of Reason Governs Plaintiff's Cartwright Act Claim**

      The nature of a restraint—*i.e.*, whether it is "horizontal" or "vertical"—

_____

subsidiary).  In any case, GM LLC, GMF, and General Motors Financial Company, Inc. are all indirect wholly-owned subsidiaries of General Motors Company.

generally informs the mode of antitrust analysis courts apply to determine its legality. *Clear Connection Corp. v. Comcast Cable Commc'ns Mgmt., LLC*, 2020 WL 6742889, at *4 (E.D. Cal. Nov. 17, 2020). "In the case of a vertical restraint (when the relationship is between entities at different levels of the same distribution chain), the rule of reason applies." *Id.* Here, Plaintiff alleges a supposed agreement between GM LLC and GMF, and perhaps including unnamed "subsidiaries, agents, or co-conspirators" and "franchisees[.]"[6] Compl. ¶¶ 5, 52. Plaintiff itself characterizes the purported "agreement" as "vertical" (*id.* ¶ 52); accordingly, the rule of reason applies.

The rule of reason "measures whether the anticompetitive aspect of a vertical restraint outweighs its pro-competitive effects." *Exxon Corp. v. Superior Ct.*, 51 Cal. App. 4th 1672, 1681 (1997). This "analysis requires a threshold inquiry into the defendant's market power." *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1001 (9th Cir. 2008). A plaintiff pursuing a rule-of-reason claim must "first define the relevant market and then show that the defendant plays enough of a role in the market to impair competition significantly." *Id.* These requirements are more than semantic: a "realistic definition is necessary to evaluate the power a challenged party has in the relevant market and the harm to competition produced by the exercise of that power." *Flaa v. Hollywood Foreign Press Ass'n*, 2021 WL 1399297, at *8 (C.D. Cal. Mar. 23, 2021) (Blumenfeld, J.).

As explained below, Plaintiff fails to plead the elements required to satisfy the rule of reason standard, including either a relevant market, or market power.

### b.    Plaintiff Fails to Allege Any Relevant Market

Plaintiff's Complaint fails to allege any relevant market. Instead, it contains passing references to: (1) the "market for third-party lease payoffs and vehicle trade ins"; (2) "the used vehicle market"; (3) "the market for previously owned or leased GM vehicles"; (4) "the secondary market for the purchase, sale or trade-in of used

---

[6] Such bald allegations suffer the "who, what, when, where" defects described *supra*.

GM vehicles"; (5) "the market for vehicles which have been leased;" (6) "the market for used GM vehicles"; (7) the "market for Chevrolet Tahoe, Cadillac Escalade, and GMC Yukon vehicles"; and (8) "the market for purchase by non-GM brand dealers for resale." Compl. ¶¶ 3–4, 7, 48–49, 58, 74.  But the significance of these "markets" to Plaintiff's Complaint is not alleged.  Because Plaintiff does not advance any of these purported markets as *relevant* markets, its Cartwright Act claim subject to the rule of reason must be dismissed.  *City of Oakland v. Oakland Raiders*, 445 F. Supp. 3d 587, 592 (N.D. Cal. 2020).

To the extent Plaintiff's Complaint can be understood to proffer one or more of these purported markets as the supposedly applicable relevant markets, Plaintiff's lack of specificity as to *which* markets are applicable provides an independent basis for dismissal.  *See, e.g.*, *Coronavirus Reporter v. Apple Inc.*, 2021 WL 5936910, at *7–*8 (N.D. Cal. Nov. 30, 2021) (dismissal of antitrust claim appropriate where complaint "references" various "different markets" but "does not provide sufficient clarity" regarding the purported significance of any); *Sumotext Corp. v. Zoove, Inc.*, 2016 WL 6524409, at *3 (N.D. Cal. Nov. 3, 2016) (dismissal of antitrust claim appropriate where "the allegations of the relevant market [were] unclear").

Even if Plaintiff does mean to advance one or more of these purported markets, its Complaint nonetheless fails to adequately allege a rule-of-reason claim.  For example, "[t]he outer boundaries of a product market are determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it."  *Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962).[7]  Plaintiff's complaint includes no such allegations regarding either

---

[7]   "[R]easonable interchangeability" assesses whether products can be characterized as substitutes for one another considering factors such as "price, use and qualities[.]" *In re ATM Fee Antitrust Litig.*, 768 F. Supp. 2d 984, 994 (N.D. Cal. 2009).  "[C]ross-elasticity of demand refers to the extent to which consumers will change their consumption of one product in response to a price change in another." *Streamcast Networks, Inc. v. Skype Techs., S.A.*, 547 F. Supp. 2d 1086, 1094 (C.D. Cal. 2007).

substitutability or demand cross-elasticity for *any* one of these purported relevant markets. *See NSS Labs*, *Inc. v. Symantec Corp.*, 2019 WL 3804679, at *3, *9 (N.D. Cal. Aug. 13, 2019) (dismissing Cartwright Act claim where party failed to either "identify the economic substitutes" or "plead any facts" regarding "cross-elasticity").

### c.   Plaintiff Fails to Allege Any Defendant's Market Power

Equally as defective, Plaintiff's Complaint lacks  any allegations regarding any Defendant's purported market power.  Market power may be established through: (a) "direct evidence," *i.e.*, "[e]vidence of restricted output and supracompetitive prices"; or (b) "circumstantial evidence," *i.e.*, evidence of sufficient market share "show[ing] that the defendant plays enough of a role in that market to impair competition significantly." *Theme Promotions*, 546 F.3d at 1001.  Plaintiff's Complaint contains allegations establishing neither, warranting dismissal of its Cartwright Act claim. *See, e.g.*, *NSS Labs*, 2019 WL 3804679, at *9 (dismissing Cartwright Act claim where party "has not alleged any facts with respect to Defendant's market power").

### 3.   *Plaintiff Fails to Allege Any "Wrongful" Conduct*

The Cartwright Act also contains a "wrongful act" requirement.  *William Morris Endeavor Ent.*, *LLC* v. *Writers Guild of Am.*, 478 F. Supp. 3d 932, 942 (C.D. Cal. 2020) (Birotte, J.).  As explained below, Plaintiff's Complaint is devoid of any allegations of illegal conduct.  For this reason, too, the claim should be dismissed.

**Plaintiff's Refusal-to-Deal Theory.**  Plaintiff first complains "Defendants" have "refus[ed] to allow non-GM dealerships to accept their leased vehicles as a trade-in and refus[ed] to allow consumers to sell their vehicles to non-GM dealerships." Compl. ¶ 3.  As explained *supra*, however, the lessee may purchase the car from GMF at the payoff price set in the lease and then sell it to whomever the lessee pleases.

Moreover, Plaintiff fails to allege GM LLC's purported, specific role in the conduct.  Stripped of the conclusory allegations of "conspiracy," the Complaint's only remaining allegations are consistent with GMF's exercise of its discretion as to the terms under which it will make its owned assets (leased vehicles) available to third

1   parties during the leases' durations.  *See Tidmore Oil Co. v. BP Oil Co.*, 932 F.2d

2   1384, 1389 (11th Cir. 1991) ("Because BP owns the right to use the Gulf logo, it is

3   entitled to decide where, when, and if the name may be used.  Its exercise of that right

4   is not a violation of section 1 of the Sherman Act.").  Such conduct—the imposition

5   of vertical restraints as to whom and under what circumstances leased vehicles may

6   be made available—is generally lawful.  *See Cont'l T. V., Inc. v. GTE Sylvania Inc.*,

7   433 U.S. 36, 54–57 (1977) (explaining "redeeming virtues" of "vertical restrictions,"

8   including for "automobiles").  As one leading treatise explains: a "manufacturer's

9   choice of one or few dealers, rather than more, has been seen as the exercise of an

10  inherent entitlement to choose one's own customers."  Areeda, <u>Antitrust Law</u> § 1652d.

11  Stated another way, the Cartwright Act does not preclude "a trader from unilaterally

12  determining the parties with whom it will deal and the terms on which it will transact

13  business."  *G.H.I.I. v. MTS, Inc.*, 147 Cal. App. 3d 256, 267 (1983).

14      Plaintiff also alleges that "Defendants have engaged in this conduct for their

15  mutual benefit" so as to "ensur[e] . . . that only GM brand dealerships have access to

16  GM vehicles" and that "they capture as much profit as possible[.]" Compl. ¶ 47.  Even

17  if this were true, "[c]ompetitors are not required to engage in a lovefest; indeed, even

18  an act of pure malice by one business competitor against another does not, without

19  more, state" an antitrust claim.  *Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d

20  1171, 1184 (9th Cir. 2016).  Plaintiff's gripe is that *it* cannot acquire vehicles below

21  their "market value"—based on a residual value specified in a lease to which it is not

22  a party—so that it can then sell them at market value, for a profit.  But "there is ***no***

23  ***duty to deal under the terms and conditions preferred by a competitor's rivals*."** *Fed.*

24  *Trade Comm'n v. Qualcomm Inc.*, 969 F.3d 974, 993 (9th Cir. 2020) (emphasis

25  added).  Put differently, Plaintiff's desire "to make more money, however, is simply

26  not the kind of problem which the antitrust laws address."  *Sausalito Pharmacy, Inc.*

27  *v. Blue Shield of California*, 544 F. Supp. 230, 235 (N.D. Cal. 1981).

28      In any case, Plaintiff itself provides a neutral, business justification for the

challenged conduct: managing a supply shortage during COVID-19 pandemic.  *See*, *e.g.*, Compl. ¶¶ 22, 54.  Taking steps to manage supply during a shortage is not an antitrust violation.  *See Thomas v. Amerada Hess Corp.*, 393 F. Supp. 58, 74 (M.D. Pa. 1975) ("when faced with a shortage of impending scarcity," decision to "impose a rationing program on or allocate scarce supplies to" firm's "then-existing customers and meanwhile refuse to acquire new accounts is reasonable business behavior").[8]

**Plaintiff's Price-Fixing and "Market Allocation" Theories.**  Plaintiff's Complaint contains two lone allegations that "Defendants and their subsidiaries, agents, or co-conspirators" conspired "to fix, raise, maintain, or stabilize" prices. Compl. ¶¶ 5, 71.  Such conclusory allegations merely recite a price-fixing claim's legal elements and thus are insufficient.  *In re German Auto. Manufacturers Antitrust Litig.*, 392 F. Supp. 3d 1059, 1072 (N.D. Cal. 2019) (internal alterations omitted).

Plaintiff's Complaint also contains one lone allegation that "Defendants allocated their market share in California in order to artificially maintain control over the market for used GM vehicles to the detriment of Plaintiff."  Compl. ¶ 49.  Market allocation, however, refers to agreements that "require participants to refrain from (1) producing one ***another's*** products, (2) selling in one ***another's*** territories, (3) soliciting or selling to one ***another's*** customers or (4) expanding into a market in which ***another*** participant is an actual or potential rival."  *Antitrust and Unfair Competition Law Section, State Bar, Cal. State Antitrust and Unfair Competition Law* (2021 Update) § 2.07 (emphases added); *Palmer v. BRG of Georgia, Inc.*, 498 U.S. 46, 49 (1990) ("classic" example is "agreement between competitors at the same level

---

[8]  *See also Nebraska-Iowa Car Wash, Inc. v. Mobil Oil Corp.*, 1976 WL 1248, at *2 (N.D. Iowa Apr. 2, 1976) ("During the fuel shortage of March 1973 it was common practice for suppliers of gasoline to first curtail their noncontractual customers, and such action does not constitute an antitrust violation."); 1-1 ABA Section of Antitrust Law, Antitrust Law Developments (8th ed.) 1D(1)(b)(5) ("Courts have also upheld refusals to deal—even absent alternative sources of supply—when a manufacturer . . . is restricted in its ability to provide products to distributors by a supply shortage.").

of the market structure to allocate territories"). Because the purported conspirators—GM and GMF—are part of a single corporate enterprise and Plaintiff fails to allege any of the above types of agreements, its "market allocation" assertion lacks merit.

**B.  <u>Plaintiff Fails to State a UCL Claim</u>**

Plaintiff's second claim is predicated on purported violations of the UCL's "unlawful" and "unfair" prongs. But Plaintiff's failures to allege either any conduct on the part of GM LLC, or the inadequacy of legal remedies, bar its UCL claim (under both prongs) at the threshold. Separately, Plaintiff also fails to allege any conduct that is either unlawful or unfair.

*1.  Plaintiff's Conclusory Allegations Fail to Identify GM LLC's Role*

While Plaintiff generically alleges that "***Defendants*** violated the UCL[,]" Compl. ¶ 82, dismissal is warranted because the Complaint fails to identify GM LLC's or any defendant's specific, purported role in the challenged conduct. *See Vargas v. JP Morgan Chase Bank*, *N.A.*, 2014 WL 3435628, at *5 (C.D. Cal. July 11, 2014) (Wright, J.) (dismissing UCL claim since "rife" with "'lump' or 'group' pleading"). Beyond grouping "Defendants," Plaintiff's UCL claim also fails because (just as with its Cartwright Act Claim), Plaintiff fails to non-conclusorily allege "who, did what, to whom, where, and when?" *Cf. id.* (UCL claim dismissed because did not "identify a single defendant specifically whose actions violate the UCL" and "d[id] no more than state legal conclusions in the form of factual allegations.").

*2.  Plaintiff Fails to Allege that Legal Remedies are Inadequate*

The UCL "provide[s] for only equitable relief, specifically injunctive relief and restitution." *Hambrick v. Healthcare Partners Med. Group*, *Inc.*, 238 Cal. App. 4th 124, 155 (2015). Because Plaintiff fails to allege the requirements for equitable relief, its UCL claim (under both prongs) warrants dismissal.

First, a UCL claim may be dismissed where "the operative complaint does not allege that" the plaintiff "lacks an adequate legal remedy." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). Plaintiff's Complaint ***nowhere***

includes such an allegation, and its UCL claim therefore fails for this reason alone. *See Sonner*, 971 F.3d at 844; *Clark v. Am. Honda Motor Co*., 528 F. Supp. 3d 1108, 1121 (C.D. Cal. 2021) (Birotte, J.) (citing *Sonner*, dismissing UCL claim since no "allegation in the Complaint *pleading* that they lack an adequate remedy at law."); *Pelayo v. Hyundai Motor Am.*, *Inc.*, 2021 WL 1808628, at *9 (C.D. Cal. May 5, 2021) (Staton, J.) ("failure to plead inadequate remedies at law dooms" UCL claim).

In addition, "equitable relief is not appropriate where an adequate remedy exists at law." *Schroeder v. United States*, 569 F.3d 956, 963 (9th Cir. 2009). Putting aside whether Plaintiff is entitled to ***any*** remedy (it is not), Plaintiff expressly seeks damages, Compl. ¶ 77, an acknowledgment that an adequate remedy exists here (damages). Courts regularly dismiss UCL claims under similar circumstances. *See Gibson v. Jaguar Land Rover N. Am.*, *LLC*, 2020 WL 5492990, at *3–*4 (C.D. Cal. Sept. 9, 2020) (Carney, J.) (dismissing UCL claim where plaintiff also sought "compensatory damages"). The Court should reach the same result here.

### 3.    Plaintiff Fails to Allege Any "Unlawful" Conduct

"Under the 'unlawful' prong, a practice violates the UCL if it also violates another state or federal law; the UCL 'borrows' violations of other laws and treats them as independently actionable." *Goldsmith v. CVS Pharmacy*, *Inc.*, 2020 WL 3966004, at *5 (C.D. Cal. May 5, 2020) (Birotte, J.). Therefore, "a UCL cause of action under the 'unlawful' prong fails if a statutory predicate is not stated"—put differently, the "UCL claim rises or falls with the underlying claim on which it is predicated[.]" *Id.* at *6. While Plaintiff's Complaint contains references to three different statutes—the Cartwright Act, California Vehicle Code § 11709.4, and California Civil Code § 2987—Plaintiff fails to establish that GM LLC has violated any of these laws, and its claim under the UCL's unlawful prong necessarily fails.

**Cartwright Act.** Although Plaintiff asserts a standalone Cartwright Act claim, it is unclear whether Plaintiff's unlawful prong claim is also predicated on the Cartwright Act, because Plaintiff does not allege that law as a predicate (Compl. ¶¶

98–103).  If it is, the UCL claim fails for the same reasons as the Cartwright Act claim.  *Garon v. eBay*, *Inc.*, 2011 WL 6329089, at *6 (N.D. Cal. Nov. 30, 2011) (unlawful prong claim "failed" with predicate Cartwright Act claim).  *See s*upra at 6–18.

**<u>Vehicle Code § 11709.4.</u>**  In an attempt to shoehorn its allegations into a UCL claim, Plaintiff alleges a violation of California Vehicle Code Section 11709.4.  Compl. ¶¶ 33, 42, 62, 82.  According to Plaintiff, this statute confers on it a "statutory right to accept a trade-in vehicle for value[.]" *Id.* ¶¶ 42. 86.  This is mistaken.

Section 11709.4 is a law regulating ***dealers*** (like Plaintiff) who seek to buy vehicles subject to lease balances, not ***lessors*** (like GMF) and not ***manufacturers*** (like GM LLC).  This is clear from the statute's language.  *See* Cal. Veh. Code § 11709.4(a)(1) ("[i]f the dealer agreed to pay a specified amount on the prior credit or lease balance owing on the vehicle purchased or obtained in trade," then "***the dealer shall tender the agreed upon amount*** . . . ***within 21 calendar days***.").  As the statute's legislative history also makes clear, it was passed in 2009 after the financial crisis.  Legislators sought to protect consumers because "[c]ar buyers have no reliable way to know in advance whether an auto dealer is on the brink of insolvency," and "[w]hen licensed auto dealerships go out of business without honoring their obligations, car buyers often face ruinous consequences."  RJN, Ex. H at 2.[9]  The statute's imposition of timely-payment obligations on ***dealers*** thus makes sense.

Plaintiff's reading, by contrast, would create new rights for unaffiliated, used car dealers from whole cloth and has no support in the statute's text.  Plaintiff concedes as much by admitting that "§ 11709.4 ***does not explicitly*** vest within all licensed dealers the ability to accept trade-ins[.]"  Compl. ¶ 34 (emphasis added).  Plaintiff's *ipse dixit* assertion that this "legal right" nonetheless must "be assumed" defies basic canons of interpretation.  "The preeminent canon of statutory interpretation requires us to presume that the legislature says in a statute what it means

---

[9]   The Court may take judicial notice of and consider legislative history on a motion to dismiss.  RJN at 4–5.  *VidAngel*, 224 F. Supp. 3d at 968 & n.4 (Birotte, J.).

and means in a statute what it says there." *O&C Creditors Grp.*, *LLC v. Stephens & Stephens XII*, *LLC*, 42 Cal. App. 5th 546, 575 (2019).  The Legislature did ***not*** include in Section 11709.4 any requirement that lessors (or manufacturers) must agree to allow dealers to exercise the purchase options in lease contracts to which the dealers are not parties.  Plaintiff is "prohibited from inserting words into a statute under the guise of statutory interpretation." *Early v. Becerra*, 47 Cal. App. 5th 325, 332 (2020).  In any case, as discussed below, the Legislature (and courts) have expressly ***affirmed*** a lessor's right to prevent assignment of the lessee's interests (if any) under the lease.

**California Civil Code § 2987.**  Plaintiff also alleges a purported Section 2987 violation, claiming that the statute grants  "a lessee . . . the right to terminate a lease contract at any time prior to the date specified in the lease contract and there is a methodology for any dealership . . . to pay off the vehicle." Compl. ¶ 100.  It is true that Section 2987 provides that a "lessee has the right to terminate a lease contract at any time prior to the scheduled expiration date specified in the lease contract." Cal. Civ. Code § 2987(a)(1).  But Plaintiff is not the "lessee," and it has the rest backwards.

Section 2987 enumerates the methods for calculating the "lessee's liability" and remaining financial obligations when terminating a vehicle lease.  Cal. Civ. Code § 2987(b).  A statute that confirms that ***lessees*** have obligations when terminating a lease in no way provides an unaffiliated ***dealer*** who wishes to stand in the lessee's shoes with the unfettered right to demand the "privilege" of "the purchase option contained in every one of Defendants' lease agreements" (Compl. ¶ 32).  To the contrary, the Legislature has made clear that a lessor ***can*** prohibit non-parties from exercising the lessee's interests under a lease by restricting the lessee's ability to transfer its lease interests.[10]  *See* Cal. Com. Code § 10303(g) ("[i]n a consumer lease,"

---

[10]    In addition to the Legislature, "California courts have [also] long upheld" provisions limiting assignment of lease interests.  *P & K Prop.*, *LLC v. Hartford Cas. Ins. Co.*, 2013 WL 556804, at *7 (N.D. Cal. Feb. 12, 2013); *cf. Mercedes-Benz Credit Corp. v. Johnson*, 110 Cal. App. 4th 53, 59 (2003) (judgment for automobile lessor

"the transfer of an interest of a party under the lease contract" may be "prohibit[ed]").

That is particularly true in the vehicle lease context. The Legislature has made it a *crime* to engage in the "unlawful subleasing of a motor vehicle" where "[t]he motor vehicle is subject to a *lease contract*, . . . *the terms of which prohibit the transfer or assignment of any right or interest* in the motor vehicle or under the lease contract[.]" Cal. Penal Code § 571(a)(1) (emphases added). If the Legislature intended to prohibit a lessor from specifying who may exercise the terms in its leases—including who may purchase the vehicles—then it would not have enacted a statute referring to a lessor's ability to impose these limitations.

### 4.   *Plaintiff Fails to Allege "Unfair" Conduct Under Any Applicable Test*

In an effort to salvage its failed theories, Plaintiff attempts to repackage them as a UCL unfair prong claim. Because the UCL "does not define" "unfair," courts have fashioned tests "to determine whether a business practice is unfair," including the "competitor," "tethering," "balancing," and "FTC" tests. *Drum v. San Fernando Valley Bar Assn.*, 182 Cal. App. 4th 247, 253 (2010). None are availing. Indeed, Plaintiffs' theories would contravene the California Supreme Court's directive that in evaluating the unfair prong, "[c]ourts must be careful not to make economic decisions or prevent rigorous, but fair, competitive strategies," and should avoid "arbitrary or unpredictable decisions about what is fair or unfair" or the enjoinment of "*pro* competitive conduct" and the "undermin[ing] of consumer protection[.]" *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 185 (1999).

**<u>Plaintiff Fails the "Competitor" Test</u>**. Plaintiff alleges that it is a "competitor[]" that has been "foreclose[d]" from "entering or competing in the market for used GM vehicles." Compl. ¶ 52. "In competitor cases, a business practice is 'unfair' only if it threatens an incipient violation of an antitrust law, or violated the policy or spirit of one of those laws[.]" *Drum*, 182 Cal. App. 4th at 254. As an initial

_____

based on lessee's improper assignment of leased vehicle because "[t]he lease contains clear language . . . that any assignment of an interest in the vehicle was prohibited.").

matter, Plaintiff's unfair prong claim is based on a refusal-to-deal, and a "mere refusal to deal does not violate the spirit or policy of antitrust law." *Drum*, 182 Cal. App. 4th at 254 (unfair prong claim dismissed under "competitor test").  Similarly, as described *supra*, Plaintiff has not pled an antitrust violation, and if "the same conduct is alleged to be both an antitrust violation and an 'unfair' business act or practice" the "determination that the conduct is not an unreasonable restraint of trade necessarily implies that the conduct is not 'unfair' toward consumers." *City of San Jose v. Off. of the Com'r of Baseball*, 776 F.3d 686, 692 (9th Cir. 2015) (internal citation omitted). This is because "[t]o permit a separate inquiry into essentially the same question under the unfair competition law would only invite conflict and uncertainty and could lead to the enjoining of procompetitive conduct." *Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 375 (2001).  Allowing Plaintiff to recast its failed antitrust claim as "unfair" under the UCL would do just that.  Accordingly, the claim should be dismissed.

**Plaintiff Fails the "Tethering" Test.**  To establish a UCL claim under the unfair prong, the "tethering" test requires a violation of "public policy" that is "tethered to specific constitutional, statutory, or regulatory provisions." *Drum*, 182 Cal. App. 4th at 257.  "To determine whether something is sufficiently 'tethered' to a legislative policy . . . , California courts require a close nexus between the challenged act and the legislative policy." *Hodsdon v. Mars*, *Inc.*, 891 F.3d 857, 866 (9th Cir. 2018).  Here, Plaintiff alleges that "Defendants' unfair conduct is tethered to its interference with Plaintiff's statutory rights pursuant to Vehicle Code § 11709.4 and Civil Code § 2987." Compl. ¶ 88.  While Plaintiff's Complaint twice touts the phrase "tethered" (*id.* ¶¶ 85, 88), it contains *no* allegations regarding any "legislative policy." *See Goldsmith*, 2020 WL 3966004, at *6 (Birotte, J.) (unfair prong claim dismissed because no "legislatively declared policy that was offended" identified and court left "with little other than a conclusory statement").  To the extent Plaintiff means to rely on some unidentified policy underpinning the Cartwright Act, Vehicle Code § 11709.4, or Civil Code § 2987, as demonstrated above, GM LLC has not violated

those laws, and thus they cannot form the basis of a UCL claim.  *See Drum*, 182 Cal.
App. 4th at 257 (under tethering test, no UCL claim stated where "plaintiff failed to
allege any violation" of "any statutory or regulatory provision").

**Plaintiff Fails the "Balancing" Test.**  To determine if conduct is unfair under
the "balancing" test, courts assess "whether the alleged business practice is immoral,
unethical, oppressive, unscrupulous, or substantially injurious to consumers[.]"
*Drum*, 182 Cal. App. 4th at 257.  Plaintiff invokes this test too.  Compl. ¶¶ 85, 87.
But Plaintiff's "general, conclusory references to" a "balancing" test do not satisfy it.
*Schertzer v. Bank of Am.*, *N.A.*, 445 F. Supp. 3d 1058, 1091 (S.D. Cal. 2020) (unfair
prong claim failed under balancing test because "stringing together of a handful
adjectives" is mere recitation of elements).  Moreover, as even Plaintiff concedes,
there are legitimate reasons for the challenged conduct, including managing a short
supply of vehicles during "the current economic environment," as a result of the
ongoing global pandemic (Compl. ¶¶ 22, 54).  *See Drum*, 182 Cal. App. 4th at 257
(under balancing test, no claim stated as firm "c[an] refuse to deal with plaintiff
without being immoral, unethical, or unscrupulous," including for valid "objective").
And, as explained above, Plaintiff may still purchase used GM vehicles (that are not
leased), and previously-leased GM vehicles that lessees paid off and then purchased.

**Plaintiff Fails the "FTC" Test.**  Finally, Plaintiff apparently seeks to avail
itself of the "FTC" test in support of its unfair prong claim.  *See* Compl. ¶¶ 85, 92.
The FTC test "draws on the definition of 'unfair' in section 5 of the Federal Trade
Commission Act, and requires that (1) the consumer injury must be substantial; (2)
the injury must not be outweighed by any countervailing benefits to consumers or
competition; and (3) it must be an injury that consumers themselves could not
reasonably have avoided."  *Drum*, 182 Cal. App. 4th at 257.

The Ninth Circuit has declined to apply the FTC test "in the absence of a clear
holding from the California Supreme Court."  *Lozano v. AT & T Wireless Servs.*, *Inc.*,
504 F.3d 718, 736 (9th Cir. 2007).  Even if the Court were to apply this test, Plaintiff

simply recites its elements, but includes no non-conclusory allegations regarding them.  *See Tellone Pro. Ctr. LLC v. Allstate Ins. Co.*, 2021 WL 1254360, at *5 (C.D. Cal. Jan. 26, 2021) (dismissing unfair prong claim under FTC test because allegations "conclusory").  Moreover, the challenged conduct—a limitation on whom may acquire GMF's products—is a non-price, vertical restraint.  Such policies are ***pro-competitive***—*i.e.*, they generally benefit, rather than reduce, competition—including because they promote competition at the dealer level.  *Sylvania*, 433 U.S. at 54–57.

## C.     The Court Should Dismiss Plaintiff's Claims with Prejudice

Because Plaintiff cannot cure its fatally deficient Cartwright Act and UCL claims, amendment of Plaintiff's claims would be futile.  The Court should therefore dismiss Plaintiff's claims with prejudice.  *See Porter v. Bates*, 2012 WL 4040347, at *5 (N.D. Cal. Sept. 11, 2012) ("Although this is Plaintiff's first complaint, dismissal with prejudice is warranted because Plaintiff cannot allege any cognizable claims.").

## D.     The Court Should Strike Plaintiff's Class Allegations

Plaintiff defines a class consisting of "all non-GM vehicle dealerships" whose "rights" "have been violated as a result of Defendants' wrongful conduct."  Compl. ¶ 64.  Because class membership turns on merits questions, Plaintiff has defined an improper "fail-safe" class.  The Court should therefore strike Plaintiff's class allegations.  *See Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 990 (N.D. Cal. 2009) ("defective class allegations" may be struck "before discovery" where "issues are plain enough from the pleadings"); *Lith v. Iheartmedia + Ent., Inc.*, 2016 WL 4000356, at *4–*5 (E.D. Cal. July 25, 2016) ("fail-safe class" includes "only those" "entitled to relief" and subject to striking at pleading stage); *Greene v. Select Funding, LLC*, 2021 WL 4926495, at *6 (C.D. Cal. Feb. 5, 2021) (Klausner, J.) (similar).

## V.     CONCLUSION

GM LLC respectfully requests that the Court dismiss Plaintiff's Complaint—including Plaintiff's Cartwright Act and UCL claims—with prejudice, and that Plaintiff's class allegations be stricken.

1  DATED:  February 25, 2022          Respectfully submitted,

2

3

4                                    By */s/ Crystal Nix-Hines*

5                                        Crystal Nix-Hines (Bar No. 326971)
                                            crystalnixhines@quinnemanuel.com
6                                        Kevin Y. Teruya (Bar No. 235916)
                                            kevinteruya@quinnemanuel.com
7                                        Claire Hausman (Bar No. 282091)
                                            clairehausman@quinnemanuel.com
8                                        Brantley I. Pepperman (Bar No. 322057)
9                                            brantleypepperman@quinnemanuel.com
                                         **QUINN   EMANUEL   URQUHART   &**
10                                       **SULLIVAN, LLP**
11                                       865 South Figueroa Street, 10th Floor
                                         Los Angeles, California 90017-2543
12                                       Telephone:  (213) 443-3000
13                                       Facsimile:   (213) 443-3100

14
                                         *Attorneys  for  Defendant  General  Motors*
15                                       *LLC*

16

17

18

19

20

21

22

23

24

25

26

27

28

# CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of February 2022, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System, causing the document to be electronically served on all attorneys of record.

By */s/ Crystal Nix-Hines* _____

Crystal Nix-Hines