# United States District Court
# Central District of California
# Western Division

| | |
|---|---|
| CALABASAS LUXURY MOTORCARS, INC., | CV 21-09566 TJH (PDx) |
| Plaintiff, | |
| v. | Order |
| GENERAL MOTORS LLC, *et al.*, | |
| Defendants. | |

    The Court has considered Defendants General Motors LLC's ["GM LLC"] and AmeriCredit Financial Services, Inc. dba GM Financial's (erroneously sued as General Motors Financial Company) ["AmeriCredit"] motions to dismiss [dkts. 17 & 18] and GM LLC's motion to strike the class allegations, together with the moving and opposing papers.

    Calabasas, a used car dealership in Los Angeles, filed this diversity antitrust action against GM LLC and AmeriCredit regarding the lease-end purchase price of vehicles for purchases made by third parties who are not General Motors dealerships.

    Calabasas alleged claims for violation of the Cartwright Act, Cal. Bus. and Prof. Code § 16700, *et seq.* ["Cartwright Act"], and California's Unfair Competition Law, Cal. Bus. and Prof. Code § 17200, *et seq.* ["UCL"]. Specifically, Calabasas alleged

that GM LLC and AmeriCredit conspired to prevent consumers from trading in their leased General Motors vehicles at non-General Motors dealerships.  Calabasas argued that the prohibition is anticompetitive and a restraint of trade in that it prevents other companies from availing of the market for leased General Motors vehicles, limits consumer choices, and results in higher prices. As a direct and proximate result, Calabasas and similarly situated dealerships have, allegedly, suffered damages as the increased used car prices during the Covid-19 pandemic have increased the demand for vehicle trade-ins.

GM LLC, now, moves to dismiss under Fed. R. Civ. P. 12(b)(6) and to strike the class allegations.  AmeriCredit, also, moves to dismiss under Rule 12(b)(6).

**Motion to Dismiss**

To sufficiently state a claim, a plaintiff must allege enough facts so that the requested relief is plausible on its face and the defendant receives notice of the basis for the claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).  While the factual allegations need not be detailed, they must go beyond labels and conclusions and raise a right to relief above the speculative level. *Twombly*, 550 U.S. at 555.  When considering a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the Court must accept all allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Further, the Court is, generally, limited to considering the facts alleged in the complaint, the documents referenced or attached to the complaint, and any facts subject to judicial notice. *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).  However, the Court may, also, consider facts conceded by the plaintiff in its opposition brief, if those concessions are consistent with the complaint. *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1117-18 (9th Cir. 2018).

**Cartwright Act Claim**

Calabasas's antitrust claim is based on the Cartwright Act.  Because the Cartwright Act is modeled after the Sherman Act, 15 U.S.C. § 1, *et seq.*, California

courts regularly apply Sherman Act cases to Cartwright Act claims. *Marin Cnty. Bd. of Realtors, Inc. v. Palsson,* 16 Cal. 3d 920, 925 (1976).

To state a claim under either the Cartwright Act or the Sherman Act, a plaintiff must allege the existence of a conspiracy that restrains trade. *Asahi Kasei Pharma Corp. v. CoTherix, Inc.*, 204 Cal. App. 4th 1, 7-8 (2012); *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008). "A company cannot conspire with itself." *Freeman v. San Diego Ass'n of Realtors*, 322 F.3d 1133, 1147 (9th Cir. 2003). Rather, to form a conspiracy, business entities must be "separate economic actors pursuing separate economic interests." *Asahi*, 204 Cal. App. 4th at 15 (2012)*; Am. Needle, Inc. v. Nat'l Football League*, 560 U.S. 183, 195 (2010). A parent company cannot conspire with its subsidiary because they "always have a unity of purpose and thus act as a single enterprise whenever they engage in coordinated activity." *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 771 (1984).

This so-called single-entity rule, also, "applies to subsidiaries controlled by a common parent." *Freeman*, 322 F.3d at 1147. "Where there is substantial common ownership [between two firms] … [those] individual firms function as an economic unit and are generally treated as a single entity." *Freeman*, 322 F.3d at 1147-48.

Here, Calabasas alleged that GM LLC and AmeriCredit conspired to violate the Cartwright Act. The complaint is silent as to the relationship between GM LLC and AmeriCredit. However, Calabasas conceded, in its opposition, that GM LLC and AmeriCredit are, both, wholly-owned, but indirect, subsidiaries of General Motors Company, with GM LLC separated from its common parent by one subsidiary, and AmeriCredit by two tiers of subsidiaries. That concession is consistent with the facts alleged in the complaint, so the Court can consider it, here. *See Hicks*, 897 F.3d at 1117-18.

Despite its concession, Calabasas argued that its Cartwright Act claim is not defeated by GM LLC's and AmeriCredit's status as corporate siblings because, first, it did not allege that General Motors Company exercises control over GM LLC and

AmeriCredit, and, second, GM LLC and AmeriCredit are not commonly owned because "[a] parent does not own or have legal title to the subsidiaries of the subsidiary[,]" *Dole Food Co. v. Patrickson*, 538 U.S. 468, 475 (2003).

However, *Dole* is inapposite for at least two reasons. First, in *Dole*, the Supreme Court was concerned chiefly with determining whether a subsidiary, like its parent, was an "instrumentality" for purposes of the Foreign Sovereign Immunities Act ["FSIA"]. *Dole*, 538 U.S. at 474. That is a fundamentally distinct legal question from the one presented here, under the Sherman Act. *See Arandell Corp. v. Centerpoint Energy Servs., Inc.*, 900 F.3d 623, 633, n.10. Second, as the Supreme Court explained in *Dole*, the question, there, needed to be resolved according to the formalities of corporate law. *Dole*, 538 U.S. at 477. Under the Sherman Act, however, the Court "eschew[s] such formalistic distinctions in favor of a functional consideration of how the parties involved in the alleged anticompetitive conduct actually operate." *Am. Needle*, 560 U.S. at 191.

Rather, the rule that a parent and subsidiary are categorically one entity, for antitrust purposes, is based on the parent company's inherent power to "assert full control at any moment if the subsidiary fails to act in the parent's best interests." *Arandell*, 900 F.3d at 630. The issue, here, is not one of title for ownership purposes, as it was in *Dole*, but whether General Motors Company has inherent control over both GM LLC and AmeriCredit. *See Copperweld*, 467 U.S. at 771-72. Because all subsidiaries share a unity of purpose with their direct parent, it follows that the same purpose must, also, be passed between a subsidiary and *its* subsidiaries. In turn, two subsidiaries who trace their lineage to the same parent corporation necessarily share the same unity of purpose. Accordingly, based on the facts conceded by Calabasas, there is no reason to conclude that GM LLC, AmeriCredit, and General Motors Company are anything but a single entity incapable of conspiring with each other for purposes of the Sherman Act and, in turn, the Cartwright Act.

Further, even if GM LLC and AmeriCredit lacked economic unity with General

Motors Company, they would still be deemed a single entity, for antitrust purposes, if they cannot be actual, or even potential, competitors of each other. *See Freeman,* 322 F.3d at 1148. Here, Calabasas admitted that GM LLC and AmeriCredit are both members of the General Motors corporate family. Calabasas, also, admitted that GM LLC is a vehicle manufacturer, and that AmeriCredit is a lender. The two entities have complementary, rather than competing, functions. As such, it would not be reasonable for the Court to infer that GM LLC and AmeriCredit were even potential competitors. *See Iqbal*, 556 U.S. at 678. Indeed, the only plausible inference, based on the facts and admissions before the Court, is that GM LLC and AmeriCredit are two arms of the same economic conglomerate, with each managing discrete facets of General Motors Company's overall business purpose. *See Twombly*, 550 U.S. at 570.

Consequently, Calabasas failed to allege sufficient facts that would allow a conclusion that GM LLC and AmeriCredit were capable of conspiring with each other under the Cartwright Act. Accordingly, Calabasas failed to state a claim under the Cartwright Act.

**Unfair Competition Law Claim**

The UCL prohibits three varieties of unfair competition: unlawful conduct, unfair conduct, and fraudulent conduct. *See People v. Persolve, LLC*, 218 Cal. App. 4th 1267, 1272 (2013). Calabasas alleged that GM LLC and AmeriCredit violated the UCL's unlawful conduct and unfair conduct prongs.

Unlawful conduct UCL claims are derivative, meaning they "borrow[] violations of other laws and treats these violations, when committed pursuant to business activity, as unlawful practices independently actionable under [the UCL]." *Farmers Ins. Exch. v. Super. Ct.*, 2 Cal. 4th 377, 383 (1992). Calabasas argued that even if the Court dismisses its Cartwright Act claim, the Court should not dismiss its unlawful conduct UCL claim, because that claim is based on common law principles that, separate from the Cartwright Act, also ban conspiracies in restraint of trade. *See Speegle v. Bd. of Fire Underwriters of the Pac.*, 29 Cal. 2d 34, 46 (1946). However, Calabasas's

argument is not supported by any authority. Indeed, the California Court of Appeal, subsequent to *Speegle*, explained that the Cartwright Act is "basically merely a statutory enactment of the common law[.] *Rolley, Inc. v. Merle Norman Cosms.*, 129 Cal. App. 2d 844 (1954). Accordingly, there is no separate common law claim upon which Calabasas could base its unlawful conduct claim. Moreover, even if such a claim did exist, Calabasas failed to allege the existence of a conspiracy, as explained above.

Alternatively, Calabasas argued that Cal. Veh. Code § 11709.4 and Cal. Civ. Code § 2987 impliedly created a statutory consumer right to trade in leased vehicles at any dealership, and a related right of automobile dealers to accept trade-ins, and that GM LLC and AmeriCredit interfered with those implied rights. Sections 11709.4 and 2987 govern any trade-ins that might take place, but there is nothing in those statutes or, apparently, in case law, that requires trade-ins to take place. Calabasas, again, provided no authority to support its argument.

Accordingly, Calabasas failed to state a claim under the unlawful conduct prong of the UCL.

Unlike unlawful conduct UCL claims, unfair conduct and fraudulent conduct UCL claims are independent, stand alone claims. To determine whether conduct is unfair, "the [C]ourt must weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 886 (1999). Calabasas alleged that GM LLC and AmeriCredit harmed the ability of Calabasas and other dealers to sell General Motors vehicles. Additionally, Calabasas alleged that consumers can now purchase used, formerly-leased General Motors vehicles only from General Motors dealers, thereby limiting consumer choice and raising prices. Those acts were done, Calabasas alleged, for the purpose of boosting GM LLC's and AmeriCredit's profits. That allegation is sufficient to allege unfair conduct in violation of the UCL.

However, because only equitable remedies are available for UCL claims, to state

a claim for violation of the UCL, a plaintiff must allege that all available legal remedies are inadequate. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). Because Calabasas failed to allege, here, that it has no adequate legal remedy, it failed to sufficiently state its UCL claim.

Accordingly,

𝔍𝔱 𝔦𝔰 𝔒𝔯𝔡𝔢𝔯𝔢𝔡 that Plaintiff Calabasas Luxury Motorcars, Inc.'s claims be, and hereby are, 𝔇𝔦𝔰𝔪𝔦𝔰𝔰𝔢𝔡 without prejudice.

𝔍𝔱 𝔦𝔰 𝔣𝔲𝔯𝔱𝔥𝔢𝔯 𝔒𝔯𝔡𝔢𝔯𝔢𝔡 that Defendant General Motors LLC's motion to strike be, and hereby is, 𝔇𝔢𝔫𝔦𝔢𝔡 as moot.

Date: August 25, 2022

                                                       𝔗𝔢𝔯𝔯𝔶 𝔍. 𝔥𝔞𝔱𝔱𝔢𝔯, 𝔍𝔯.
                                   𝔖𝔢𝔫𝔦𝔬𝔯 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔇𝔦𝔰𝔱𝔯𝔦𝔠𝔱 𝔍𝔲𝔡𝔤𝔢